## LEWIS v. UNITED STATES.

No. 203.   Argued February 3, 1955.—Decided March 14, 1955.

*Walter E. Gallagher* argued the cause for petitioner. With him on the brief was *Myron G. Ehrlich.*

*Beatrice Rosenberg* argued the cause for the United States.   With her on the brief were *Solicitor General Sobeloff, Assistant Attorney General Olney, Marvin E. Frankel* and *Joseph A. Barry.*

MR. JUSTICE MINTON delivered the opinion of the Court.

An information was filed in the Municipal Court of the District of Columbia charging the petitioner with violation of 26 U. S. C. § 3290 in that he engaged in the business of accepting wagers without paying the occupational tax imposed by that section.   The Municipal Court sustained

a motion to dismiss the information. The Municipal Court of Appeals for the District reversed, 100 A. 2d 40, and the Circuit Court of Appeals affirmed the Municipal Court of Appeals. 94 U. S. App. D. C. ——, 214 F. 2d 853. We granted certiorari. 348 U. S. 810.

The questions presented in this case are: Does the Act, as applied to the petitioner in the District of Columbia, constitute a valid exercise of the taxing power or is it a penalty under the guise of a tax? Secondly, does it violate the Fifth Amendment's prohibition as to compulsory self-incrimination? Thirdly, does it contravene the Fourth Amendment's ban against unreasonable search and seizure? The first two questions were categorically answered in the negative, and the validity and constitutionality of the Act upheld by us in *United States* v. *Kahriger*, 345 U. S. 22; the third question is not substantially different from the second and is also controlled by *Kahriger*. The only material factual difference between that case and the instant case is that in *Kahriger* the violation occurred in a State, namely, Pennsylvania, while in the instant case the violation is charged to have taken place in the District of Columbia.

The statute, 26 U. S. C. § 3290, provides:

> "A special tax of $50 per year shall be paid by each person who is liable for tax under subchapter A or who is engaged in receiving wagers for or on behalf of any person so liable."

Another section, 26 U. S. C. § 3271, reads:

> "Payment of tax—(a) Condition precedent to doing business.
> "No person shall be engaged in or carry on any trade or business mentioned in this chapter until he has paid a special tax therefor in the manner provided in this chapter."

Subchapter A, referred to in § 3290, provides in § 3285:

"(a) Wagers.

"There shall be imposed on wagers, as defined in subsection (b), an excise tax equal to 10 per centum of the amount thereof."

These provisions must be read together, and when we do, it seems clear that payment of the special $50 tax is to be made prior to engaging in the business of accepting wagers.

We held in *Kahriger* that this statute was a constitutional exercise of the taxing power and was not a penalty under the guise of a tax. 345 U. S., at 24–32. It is argued that that case involved wagering in a State, where such activity is not a violation of federal law, that the instant case arises in the District of Columbia, where wagering is by federal law a crime, D. C. Code, 1951, § 22–1501 *et seq.*, and that this statute as applied to petitioner in the District of Columbia is a penalty in the guise of a tax. The short answer to this argument is that this Court has long held that the Federal Government may tax what it also forbids. *United States* v. *Stafoff,* 260 U. S. 477.

Secondly, it is contended by petitioner that the Act in question is unconstitutional because compliance compels self-incrimination in contravention of the Fifth Amendment. The Fifth Amendment provides that one cannot be *compelled,* in a criminal case, to be a witness against himself. It is a shield that prevents one from being convicted out of his own mouth by anything short of voluntary statements.

Petitioner maintains that the taxes imposed are retrospective in application. It is argued that he must be liable for the tax under subchapter A in the sense that he must have already wagered before he is required to take out the occupational tax, and that to require him to do so

compels admission that he has gambled. We do not so read the statute. The Act does not mean one must first have made a wager as defined in subchapter A and therefore incurred liability to pay the tax levied therein before liability for the occupational tax attaches. The Act is wholly prospective and by its terms did not become applicable until November 1, 1951, more than ten days after its enactment on October 20, 1951. See compiler's note to 26 U. S. C. § 3285. The statute simply designates a class that *is liable* to pay the ten percent tax when a wager or wagers are made. Payment of the $50 tax here under consideration is a registration fee that must be paid before engaging in the business of wagering.

We said in *Kahriger, supra,* at 32–33: "Under the registration provisions of the wagering tax, appellee is not compelled to confess to acts already committed, he is merely informed by the statute that in order to engage in the business of wagering in the future he must fulfill certain conditions." The condition here important was that petitioner must first pay the $50 tax, but that did not give him any license to engage in an unlawful business. *License Tax Cases,* 5 Wall. 462, 471. It only warned that if he proposed to carry on this particular business he must pay the tax.

If petitioner desires to engage in an unlawful business, he does so only on his own volition. The fact that he may elect to pay the tax and make the prescribed disclosures required by the Act is a matter of his choice. There is nothing compulsory about it, and, consequently, there is nothing violative of the Fifth Amendment. If he does not pay the occupational tax, proceeds to accept wagers, and is prosecuted therefor, as in this case, he cannot be compelled to testify and may claim his privilege. The only compulsion under the Act is that requiring the decision which would-be gamblers must make at the threshold. They may have to give up gambling, but

there is no constitutional right to gamble. If they elect to wager, though it be unlawful, they must pay the tax.

And, finally, the petitioner argues that to require him to pay the tax and exhibit the stamp in his place of business, as required by 26 U. S. C. § 3293 of the Act, is to furnish probable cause for the issuance of a search warrant. This is just another facet of the Fifth Amendment argument, but the ready answer is that the petitioner has no stamp. If he does not purchase a stamp even though he wagers, which is this case, it is difficult to see how such failure would give probable cause for the issuance of a search warrant. His complaint is that if he had one he might get in trouble. Since petitioner is without a stamp, he is not in a position to raise the question as to what might happen to him if he had one.

The judgment is

*Affirmed.*

MR. JUSTICE BLACK, with whom MR. JUSTICE DOUGLAS joins, dissenting.

*United States* v. *Kahriger,* 345 U. S. 22, put a most restrictive interpretation on the Fifth Amendment's provision against compelling persons to confess facts which will help government take away their liberty. But this case reduces the Fifth Amendment's protection still more. Kahriger had to confess only to state law violations to save himself from going to jail for violating the federal registration law. This was one of the arguments relied on by the Government to persuade this Court to sustain the federal law as applied to Kahriger.[1] But the peti-

---

[1] The Government there argued: "Wagering is doubtless unlawful in many states (perhaps in all but Nevada), but it is not forbidden by any federal law.

"Thus the registration statement in which the taxpayer is required to set forth his name, address and places of business, and the names and addresses of his agents or principals does not call for a disclosure

tioner here, in order to be permitted to pay the $50 tax, must file a written confession with the District of Columbia Internal Revenue Collector revealing that, in violation of federal law, he is at the moment he registers "engaged in the business of accepting wagers." [2]   He must also tell where he carries on the illegal business, the names and addresses of those who receive wagers for him and of those for whom he receives wagers. [3]   For engaging in this wagering business, which registration would compel petitioner to confess, he could be convicted of felony, fined $1,000, imprisoned three years, or both. [4] And for conspiring with his employers or employees to promote a lottery even in the future, which compulsory registration is designed to reveal, petitioner could be punished by a fine of $10,000, imprisonment for five years, or both. [5]   Thus in order to pay the tax, petitioner would be

of information which will reveal a violation of federal law."   Reply Brief for the United States, p. 3, *United States* v. *Kahriger*, 345 U. S. 22.

[2] See *United States* v. *Kahriger*, 210 F. 2d 565, 570.   Paragraph 4 of Instructions on the tax return which petitioner would have been compelled to sign in order to pay the $50 tax provides: "The information called for on the return must be completely furnished.   If not so furnished, the special tax stamp will not be issued."

[3] That petitioner would have been compelled to make such confessions is shown by a copy of the "Special Tax Return and Application for Registry—Wagering" in effect at the time of petitioner's failure to register.   It reads in part: "5. Are you engaged in the business of accepting wagers on your own account? . . . If yes, [give] (*a*) Name and address where each such business is conducted. . . . (*b*) Number of employees and/or agents engaged in receiving wagers on your behalf. . . . (*c*) True name, current address, and special tax stamp number of each such person. . . . 6. Do you receive wagers for or on behalf of some other person or persons? . . . If yes, give true name and address of each such person. . . ."

[4] The D. C. Code, 1951, § 22–1501 makes promotion of lotteries a crime.   The definition of lotteries here includes the definition of wagers in the registration law.   65 Stat. 529, 26 U. S. C. § 3285.

[5] 18 U. S. C. § 371.

compelled to supply evidence useful and maybe sufficient to convict him of felonies for which he could be incarcerated for years. If this would not violate the Fifth Amendment's privilege against self-incrimination, it is hard to think of anything that would. Cf. *Blau* v. *United States*, 340 U. S. 159, and cases cited.

And yet the Court holds petitioner can be sent to jail for refusal to make a public registration of his guilt of criminal conduct. This result seems to be largely dependent on the statement that petitioner has "no constitutional right to gamble." Of course not. But if we remain faithful to the letter and spirit of the Bill of Rights, gamblers, like others, have a right to invoke its safeguards. It should not be forgotten that breaches opened to get lawless gamblers remain to jeopardize the liberty of the law-abiding.

MR. JUSTICE FRANKFURTER, dissenting.

In view of the recentness of the decision in *United States* v. *Kahriger*, 345 U. S. 22, and my continuing disagreement with the constitutional views which it expressed, I cannot acquiesce in this decision. Indeed, this case only emphasizes the difficulties which I found in *Kahriger*, for here we are concerned with a spurious use of the taxing power as a means of facilitating prosecution of federal offenses.