John El STONE, Appellant,

v.

UNITED STATES of America, Appellee.

No. 21977.

United States Court of Appeals
Fifth Circuit.

March 4, 1966.

Emmett Colbin, Jr., Charles W. Tessmer, Dallas, Tex., for appellant.

Robert B. Ward, Asst. U. S. Atty., B. H. Timmins, Jr., Asst. U. S. Atty., Melvin M. Diggs, U. S. Atty., Dallas, Tex., for appellee.

Before JONES,* Senior Judge,· and GEWIN and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge:

This appeal is from a judgment of conviction entered on six counts of an indictment after a trial by the court without a jury. Appellant waived jury trial. The indictment was in sixteen counts and was returned against appellant, James Woodrow Stone and Isadore Miller.

Count I charged appellant with violating 26 U.S.C.A. § 7203 by accepting wagers during the period October 1,

* Of the Court of Claims, sitting by designation.

1962 through June 30, 1963 without having paid the special occupational tax imposed by 26 U.S.C.A. § 4411 and due under 26 U.S.C.A. § 4901. He was sentenced to sixty days in prison and fined $1,000 on this count. He was placed on probation for three years and sentenced $1,000 each on convictions under Counts IV, VII, X, XV, and XVI, the sentences of probation to run concurrently. Count IV charged him with a violation similar to that charged in Count I for the period October 1, 1961 through June 30, 1962. Counts VII and X charged him with violating 26 U.S.C.A. § 7203 by accepting wagers during certain periods without having registered as required under 26 U.S.C.A. § 4412. Count XV charged all three of the defendants with violating 18 U.S.C.A. § 371, and § 7203, supra, by conspiring to conduct a business of accepting wagers without first paying the special occupational tax. Count XVI charged them with violating § 7203 by failing to make excise tax returns on taxes due under 26 U.S.C.A. § 4401. Counts XIII and XIV were dismissed by the government, and the other counts related solely to James Woodrow Stone or Isadore Miller.

There are four assignments of error. Each of the counts in issue are said to be invalid in that the registration and special occupational tax statutes, 26 U.S.C.A. §§ 4411, 4412 and 4901 compel disclosures which would incriminate the registrant in view of the criminal provisions of 18 U.S.C.A. §§ 1952, 1953 and 1084,[1] and the penal provisions of the State of Texas against gambling. Consequently, it is argued, they are violative of appellant's constitutional privilege under the Fifth Amendment. It is urged that the District Court erred in overruling the motion for judgment of acquittal on this ground. The other three assignments question the sufficiency of the evidence.

■ The self incrimination argument as respects the penal provisions of the state law was put to rest by the Supreme Court in United States v. Kahringer, 1952, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754. The constitutionality of the registration provision was upheld for the reason that the Fifth Amendment applies only to past conduct and the registration provision was construed as applying to future conduct. In Lewis v. United States, 1954, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475, federal laws against gambling in the District of Columbia were said to give rise to the self incrimination claim but the Supreme Court followed the reasoning of *Kahringer* and again affirmed. These authorities are subsisting and binding on this court. But, appellant argues, 18 U.S.C.A. §§ 1952, 1953 and 1084, Footnote (1), supra, making specified interstate gambling activities unlawful, have been enacted in the interim and they render the reasoning of the Supreme Court in *Kahringer* and *Lewis* inapplicable.

The argument is that the registration provision may serve as a "link in a chain of evidence" to convict one of past interstate gambling activity under these stat-

---

[1] Section 1084 prohibits the transmission of bets or wagers by a wire communication facility in interstate or foreign commerce. Section 1952 prohibits travel in interstate or foreign commerce or the use of any facility therein, including the mail, for unlawful activity. Unlawful activity is described in § 1952 (b) as:

"As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States."

Section (a) requires that the travel or use of the facility be with intent to distribute the proceeds of an unlawful activity, or to commit a crime of violence to further unlawful activity, or otherwise to promote or carry on any unlawful activity, and contains the requisite that one of these acts be thereafter accomplished or performance attempted.

Section 1953 makes it unlawful to send or carry records, tickets, etc. used in betting or wagering in interstate or foreign commerce.

utes. The fallacy in this argument is that we do not have such a case. This prosecution is not brought under these interstate gambling activity statutes, and thus we are not presented with a question of evidence of registration and payment of the special occupational tax having been admitted to prove a charge of either prior or subsequent illegal conduct. Cf. United States v. Zizzo, 7 Cir., 1964, 338 F.2d 577, cert. den., 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435, where a registration and an occupational tax return were held admissible in a prosecution brought under 18 U.S.C.A. § 1952. There the registration and return preceded the enactment of § 1952.

■ The constitutionality of the registration and occupational tax provisions was upheld in the face of these new interstate gambling activity statutes in United States v. Cefalu, 7 Cir., 1964, 338 F.2d 582, citing United States v. Zizzo, supra, as authority. This view was reaffirmed by the Seventh Circuit in United States v. Altiere, 7 Cir., 1964, 343 F.2d 115, vacated by Supreme Court on other grounds, 86 S.Ct. 529; and United States v. Angelini, 7 Cir., 1965, 346 F.2d 278. See also United States v. Costello, 2 Cir., 1965, 352 F.2d 848.

Appellant relies on Albertson v. Subversive Activities Control Board, 1965, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165. There the self-incrimination which made the Fifth Amendment privilege applicable was based on past conduct. The court said:

"The risks of incrimination which the petitioners take in registering are obvious. Form IS-52a requires an admission of membership in the Communist Party. Such an admission of membership may be used to prosecute the registrant under the membership clause of the Smith Act, 18 U.S.C. § 2385 (1964 ed.) or under § 4(a) of the Subversive Activities Control Act, 50 U.S.C. § 783(a) (1964 ed.), to mention only two federal criminal statutes. * * * It follows that the requirement to accomplish registration by completing and filing Form IS-52a is inconsistent with the protection of the Self-Incrimination Clause.

The court also concluded that Form IS-52 violated the Self-Incrimination Clause for the reason that the information called for in it " * * * might be used as evidence in or at least supply investigatory leads to a criminal prosecution." Registration by a Communist under either form would disclose past conduct subject to prosecution.

On the other hand, it is clear that the *Kahringer* and *Lewis* holdings as they relate to the Fifth Amendment are founded on a future conduct concept as distinguished from past conduct which is the basis for the privilege. A person may or may not gamble after registering, according to his own volition. It must be admitted that the language in *Albertson* directed to Form IS-52 does bear rather closely on the problem presented in requiring gamblers to register and pay the special tax. Form IS-52 was a supplement to Form IS-52a and required the name of the Communist-action organization of which registrant was a member within the preceding twelve months, the name of registrant, all other names used by registrant during the past ten years, date of birth, place of birth, residence and business address, offices held in the Communist-action organization, and a description of the duties and functions performed during the tenure of office. On balance however, we think it clear that this information, which the Supreme Court described as being of the type that " * * * might be used as evidence in or at least supply investigatory leads to a criminal prosecution", applies to past conduct and for that reason falls in the category with Form IS-52a.

Thus *Albertson* in no way impinges on the privilege against self-incrimination rulings of *Kahringer* and *Lewis* which are limited to future conduct situations. Our view that these cases were in no way disparaged by *Albertson* is buttressed by the fact that neither case is cited in *Albertson*. Being of this view, it follows that the District Court did not err in

**260**

denying the motion to acquit on the constitutional ground.

Appellant further contends that the evidence was insufficient to show that he had knowledge of the duties imposed by the wagering tax statutes in question. In so doing he seeks to show that the willfulness requirement of the statute has not been met. There was evidence from several persons that they placed bets with appellant over a course of time ranging from one to ten years. There was evidence that in 1961 appellant refused to accept a bet offered by telephone from the State of Missouri at which time he said that " * * * since they had passed this new law he didn't accept wagers over the state line." This established appellant's general familiarity with laws pertaining to gambling, and was a sufficient base for an inference beyond a reasonable doubt that appellant had knowledge of the duties imposed on him by the Wagering Tax statutes. Edwards v. United States, 5 Cir., 1964, 334 F.2d 360.

The remaining contentions of insufficiency of evidence to convict on Counts XV and XVI are without merit. The proof on these counts was ample.

Affirmed.