William Condon **GRAHAM**, Petitioner,

v.

O. G. **BLACKWELL**, Warden, United States Penitentiary, Atlanta, Georgia, Respondent.

Civ. No. 4997.

United States District Court
M. D. Tennessee,
Nashville Division.

May 3, 1968.

Glenn Zell, Atlanta, Ga., for petitioner.

Gilbert S. Merritt, Jr., U. S. Atty., Nashville, Tenn., for respondent.

## ORDER

WILLIAM E. MILLER, Chief Judge.

In this proceeding, pursuant to 28 U.S.C. § 2255, petitioner has moved the Court to reconsider its order denying his motion to vacate sentence.

The petitioner is presently restrained of his liberty in a United States penitentiary as a result of a sentence imposed by this Court on December 23, 1964, following a verdict of guilty upon charges of violating 26 U.S.C. § 7203, § 4401(a), § 4401(c), § 4411 and § 4412. The gist of the charges against petitioner was a failure to comply with the federal wagering tax provisions applicable to persons engaged in the business of accepting wagers and persons who have accepted wagers. Petitioner contends that his restraint is illegal in that he was convicted in violation of his constitutional right not to incriminate himself.

Two contentions are advanced by petitioner in support of his motion for reconsideration. They are: (1) the Court erred in failing to apply retroactively the rule propounded by the United States Supreme Court in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968); and (2) the Court erred in stating that the petitioner had waived his constitutional right not to incriminate himself by failing to assert the privilege at his trial. These contentions will be considered in order.

Petitioner asserts that the *Marchetti* and the *Grosso* decisions should be applied retroactively to render his present confinement illegal. Those decisions deal with factual situations closely resembling the instant case in that in each case, the petitioner had been convicted for failure to comply with the same wagering tax requirements. Both Marchetti and Grosso had protested at their trials that compliance with the federal statutory obligations violated their Fifth Amendment privilege against self-incrimination. *Marchetti*, supra 390 U.S. at 49, 88 S.Ct. 697; *Grosso*, supra at 63, 88 S.Ct. 709. On the authority of United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953), and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955), the trial courts refused to allow the petitioners to challenge the constitutionality of the requirements on that basis. However, the Supreme Court granted certiorari to re-examine the constitutionality under the Fifth Amendment of the pertinent provisions of the wagering tax statutes and whether *Kahriger* and *Lewis* still had vitality. Stated very briefly, the Supreme Court concluded that those provisions may not be employed to punish criminally those persons who have defended a failure to comply with the requirements with a proper assertion of the privilege against self-incrimination. The Court reversed the appellate court decisions upholding the convictions for violations of the federal wagering tax statutes.

With respect to the question of whether or not a new constitutional principle should be accorded retroactive effect, the rule approved by the Supreme Court in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), is that in criminal cases concerning constitutional claims, the court may in the interest of justice make a rule prospective only where the exigencies of the situation require such an application. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). The criteria for determining whether a rule should have prospective application only are (1) the purpose to be served by the new standard, (2) the extent of the reliance by law enforcement officials upon prior decisions on the subject, and (3) the effect on the administration of justice of a retroactive application of the new standard. As stated in *Linkletter,* supra, the court must weigh the merits and demerits in each case. The way in which these criteria combine must inevitably vary with the rule involved and retroactivity must be determined in each case by looking to the peculiar traits in question. 381 U.S. at 629, 85 S.Ct. 1731.

This fact and the language used in Stovall v. Denno, 388 U.S. 293, 87 S.Ct.

1967, 18 L.Ed.2d 1199 (1967), suggest that the three criteria to be used in determining whether retroactive application is proper may be balanced by the court. In *Stovall,* supra, the Court, after discussing the purpose factor, referred to "the unusual force of the *countervailing* considerations" strengthening its conclusion in favor of prospective application. [Emphasis supplied.] 388 U.S. at 299, 87 S.Ct. at 1971. The Court also stated, "We regard the factors of reliance and burden on the administration of justice as entitled to such *overriding* significance as to make that distinction unsupportable." [Emphasis supplied.] Id. at 300, 87 S.Ct. at 1972.

The first criterion is concerned with the purpose of the new standard. In determining whether this criterion has been met, the Court has considered the reasoning of the Supreme Court in Johnson v. New Jersey, supra, a case dealing with whether or not retroactive effect should be accorded to the rules in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966). There, having found that the prime purpose of those rulings was to guarantee full effectuation of the privilege against self-incrimination, the Supreme Court pointed out that the rulings encompass situations in which the danger of self-incrimination is not as great as when the accused is subjected to overt and obvious coercion. By suggesting that there are differences in the degree to which a person may be made to incriminate himself, the Court seems to recognize that, although the *Escobedo* and *Miranda* rules were formulated for the purpose of insuring that only reliable statements would result from in-custody interrogation, the danger of unreliability was not so great as to warrant making the decisions retroactive.

The Court is of the opinion that the Supreme Court would respond similarly to the question of whether or not the *Marchetti* and *Grosso* rule should be ac-

corded retroactivity. The purpose of the new standard formulated in those cases is to prevent situations where prospective registrants would be compelled by the threat of federal prosecution to enhance the likelihood of their prosecution in state courts for future acts because compliance with the federal regulations could serve as decisive evidence that they have in fact subsequently violated the state gambling prohibitions. Or, stated more simply, the Supreme Court has decided that the methods employed by Congress in the federal wagering tax statutes would not be permitted to violate a person's Fifth Amendment privilege against self-incrimination with respect to possible future prosecution in a state court.

The question of whether the purpose of this newly-formulated standard will be served by retroactive application should turn upon whether this rule affects "the very integrity of the fact-finding process" and averts "the clear danger of convicting the innocent." Linkletter v. Walker, 381 U.S. at 639, 85 S.Ct. at 1743; Tehan v. Shott, 382 U.S. at 416, 86 S.Ct. at 465. Determining the effect of retroactive or prospective application of a rule is a matter of probabilities. For example, the Supreme Court gave retroactive effect to Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205 (1964), a case involving a coerced confession, " * * * because confessions are likely to be highly persuasive with a jury, and if coerced they may well be untrustworthy by their very nature." Johnson v. New Jersey, 384 U.S. at 729, 86 S.Ct. at 1778. But, retroactive application was denied Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), despite the fact that comment on the defendant's failure to testify may sometimes mislead the jury concerning the reasons why the defendant has refused to take the witness stand. *Johnson,* supra, at 729, 86 S.Ct. 1772. Also, in Stovall v. Denno, supra, the Court refused retroactive application of the rule requiring exclusion of identification evi-

dence when it is tainted by the accused's having been exhibited in the absence of counsel to identifying witnesses before trial. The Court held that there was little probability that the condemned practice would affect the integrity of the truth-determining process.

The situation of the instant case is not one in which the action of federal law enforcement authorities prior to the *Marchetti* and *Grosso* decisions infected the integrity of the truth-determining process. With respect to the crime with which petitioner was charged—failing to comply with the statutory obligations—the petitioner was in no way compelled by federal authorities to do anything or say anything which would facilitate his conviction on the federal charges. Rather, petitioner was motivated not to comply merely by the threat of possible state prosecution.

The question with which this Court must deal is whether, in the course of a federal investigation or trial, there was a probability or even a possibility that an innocent person may have been compelled to contribute to his own conviction for the crime of failing to comply with the federal wagering tax statutes. If so, the *Marchetti* and *Grosso* decisions should be applied retroactively so as to obviate that dangerous possibility. If not, and if there is little likelihood that an innocent person was compelled to convict himself, i. e., admit that he had not paid the tax or registered, when he was, in fact, not a gambler at all, and the only possibility is that persons who did not pay the tax, but were, in fact, gamblers, are now imprisoned, then the rule of *Marchetti* and *Grosso* should not be applied retroactively.

The Court is satisfied that the purpose for which the new standard was formulated does not require that the standard be accorded retroactive application. While the placing of an accused gambler in the circumstances under which petitioner was tried is now condemned under the present rule, petitioner should not be heard to contend that he was convicted through a contamination of the truth-determining process because of the possibility of future state prosecution. And, it is hardly a basis for granting retroactive application to say that while the government's evidence concerning the crime charged was truthful, this petitioner should be permitted to go free because he decided to commit the federal offense in order not to leave himself open to prosecution by the state.

The second criterion, as stated above, involves the extent to which law enforcement authorities have relied on the old standard. Because of the Supreme Court decisions prior to *Marchetti* and *Grosso,* there is no doubt that law enforcement authorities were of the opinion that there was no constitutional violation in denying an accused gambler the right to defend himself against federal wagering tax statute violation charges by asserting his Fifth Amendment privileges against self-incrimination.

The third criterion involves the effect which a retroactive application of the new standard would have upon the administration of justice. This factor takes into account the necessity for evidentiary hearings and whether retrial would be necessary to determine the legality of imprisonment of persons seeking review of their convictions under the federal wagering tax statutes. If the impropriety of a person's imprisonment under the new standard could be determined without a serious disruption of the administration of our criminal laws, then the weight of this factor in the balancing process would be in favor of retroactive application of the *Marchetti* and *Grosso* decisions to render illegal the imprisonment of those persons whose convictions under the wagering tax statutes became final before the new constitutional standard was formulated. On the other hand, if the question of whether a person is improperly imprisoned is determinable only through methods which drastically tax the administration of justice, then the weight of this factor swings toward mere prospective application only.

Assuming for purposes of discussion only that the new standard should be applied to convictions which had become final by the time *Marchetti* and *Grosso* were rendered, the Court must determine what impact such application will have. The answer to this question requires a consideration of the precise holding in those cases. Mr. Justice Harlan stated in his opinion in *Marchetti:*

> Nonetheless, we can only conclude, under the wagering tax system as presently written, that petitioner properly asserted the privilege against self-incrimination, and that his assertion should have provided a complete defense to this prosecution. This defense should have reached both the substantive counts for failure to register and to pay the occupational tax, and the count for conspiracy to evade payment of the tax. We emphasize that we do not hold that these wagering tax provisions are as such constitutionally impermissible; we hold only that those who properly assert the constitutional privilege as to these provisions may not be criminally punished for failure to comply with their requirements. 390 U.S., at 60, 88 S.Ct., at 709.

■ It is safe to conclude from this language that the Supreme Court intended the new standard to have application only in those cases where the accused asserts the privilege at his trial or where, having unknowingly failed to assert his constitutional privilege, the accused raises the privilege after the trial. If retroactive application is assumed in those cases where a person presently serving a conviction which became final before *Marchetti* and *Grosso* asserted the privilege at his trial, the only question that would have to be answered is whether or not the person seeking release under a retroactive application of the new standard was convicted under the provisions of Title 26 U.S.C. § 7203. This fact could be easily determined from the record. If all convictions for failure to comply with the statutory requirements were preceded by such a defense, retroactive application of the new standard would seem warranted because there would be little or no burden on the administration of justice.

■ Where the accused did not assert the constitutional privilege until after the trial, a more difficult situation would be presented. It would then become necessary to determine whether the accused, by having failed to assert the privilege at his trial, waived his right to assert the privilege at a later time and thereby precluded himself from the benefit of the *Marchetti* and *Grosso* rule. As stated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1937), the courts indulge every reasonable presumption against waiver of fundamental constitutional rights and do not presume acquiescence in their waiver or loss. To find that a person has waived his fundamental rights, the courts must find "an intentional relinquishment or abandonment of a known right or privilege," Ibid. The determination of whether there has been an intelligent waiver must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. Ibid.

Thus, where a person failed to assert the Fifth Amendment privilege at his trial and later seeks to have his conviction overturned, it would be necessary to conduct evidentiary hearings for the purposes of examining the "particular facts and circumstances" of the case to determine if there had been an intelligent waiver of the privilege. The need to conduct such hearings would to some degree disrupt the administration of our criminal laws and though the error complained of might be fundamental it is not of the nature requiring the upsetting of all final convictions based upon it.

■ The Court is satisfied that the three criteria to be used in determining whether a new constitutional rule should be applied retroactively, when applied to the factual situation to which the *Mar-*

*chetti* and *Grosso* decisions were directed, demonstrate that retroactive applicability of the rule in those cases is not warranted. While it may be true that in some instances, as in *Marchetti*, 390 U.S., at 49, 88 S.Ct. 697, and *Grosso*, 390 U.S., at 63, 88 S.Ct. 709, the privilege against self-incrimination had been asserted at the trial and the burden of determining this point would be small, the other factors are of such overriding significance as to make that consideration of relative unimportance.

 Taking the matter a step further and assuming that retroactive effect is accorded despite the fact that none of the criteria for retroactivity is met, the Court is of the opinion that petitioner could not claim applicability of the new rule to his case anyway. As discussed infra, a person imprisoned for federal wagering tax violations must have asserted the privilege against self-incrimination at his trial or, where he failed to assert the privilege at his trial, the failure must not have been an intelligent and intentional relinquishment. The burden of proof rests upon the party seeking review of his conviction to establish that he did not competently and intelligently waive his constitutional right. Johnson v. Zerbst, supra, at 457, 58 S.Ct. 1019. The determination of this question turns upon the "particular facts and circumstances" of each case, including the background, experience, and conduct of the accused.

 It is true that in Johnson v. Zerbst, supra, the Supreme Court would not presume an intelligent waiver of the fundamental right to be assisted by counsel at a trial, but the petitioner in that case was an uninformed man and was being tried for the first time in his life. The particular facts and circumstances of the instant case are directly contrary to those of Johnson v. Zerbst. The petitioner in this case cannot plausibly assert that he lacked the background and knowledge to know of the existence of the Fifth Amendment privilege against self-incrimination. In fact, the transcript of the proceedings in this court when petitioner was sentenced clearly reflects that petitioner had frequently been involved in criminal violations. Petitioner's extensive previous involvement in criminal prosecutions and the fact that he was represented by experienced and competent counsel at his trial militate against a presumption that he did not learn of the privilege until after the trial, and against a finding that the privilege was not intelligently waived.

It is, therefore, ordered that petitioner's motion to reconsider the Court's order denying petitioner's motion to vacate sentence be and the same is hereby denied.