**UNITED STATES of America,**
**Plaintiff,**

v.

**Edward E. MILDER, Defendant.**

**Crim. No. 01549.**

United States District Court,
D. Nebraska.

July 23, 1971.

Richard A. Dier, U. S. Atty., Robert J. Becker, Asst. U. S. Atty., Omaha, Neb., for plaintiff.

Martin A. Cannon, Matthews, Kelley, Cannon & Carpenter, Omaha, Neb., for defendant.

760

## MEMORANDUM AND ORDER

RICHARD E. ROBINSON, Chief Judge.

This matter comes before the Court upon defendant's motion for new trial. [Filing # 64].

Defendant was charged with violating Int.Rev.Code of 1954, § 7201 which provides:

"*Attempt to Evade or Defeat Tax.*
Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

The government adduced evidence that defendant, in the years 1964, 1965 and 1966, embezzled funds from the Milder Oil Company, for which firm he performed professional accounting, and failed to report said embezzled funds as income.

■ It is, of course, established that an embezzler is taxable on the amount of money embezzled. James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L. Ed.2d 246 [1961]. The case was tried to a jury, and they returned a verdict of guilty.

The defendant now advances several reasons on this motion for the granting of a new trial.

Of all the reasons defendant has advanced, only one needs to be considered, the rest having no real merit.

Defendant contends that he should not have been prosecuted for tax evasion, because he was not required to report embezzlement income by virtue of his Fifth Amendment right not to " * * * be compelled in any criminal case to be a witness against himself * * *," U.S. Const. Amend. V, and the Supreme Court decisions in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L. Ed.2d 889 [1968]; Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 [1968]; Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L. Ed.2d 923 [1968]; Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L. Ed.2d 57 [1969].

The rationale of the aforesaid cases is that when a statute requires an individual to disclose information, and imposes a criminal sanction for his failure to do so, he need not comply with the statute if he reasonably apprehends that supplying the required information would furnish a "significant link in a chain of evidence against him", and thus violate his privilege against self-incrimination.

In *Marchetti,* the Court reversed a conviction for failure to pay a federal tax on gambling, because providing the tax information would have shown the defendant was gambling in violation of various state laws. *Grosso* involved a substantially similar situation.

In *Haynes* the Court reversed a conviction for failure to register firearms, the possession of which was illegal under other federal and state statutes.

Likewise, as to a conviction for failure to pay a federal tax on transporting marijuana across state lines, because possession of marijuana violated other state and federal laws. Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L. Ed.2d 57 [1969].

The gist of these cases is that a defendant cannot be prosecuted for failing or refusing to relinquish his Fifth Amendment right not to be compelled to be a witness against himself. In other words the Court concluded that the interests and purposes which underlie the defendant's Fifth Amendment privilege outweighed the government's interests and purposes in ascertaining the identity of criminals and obtaining evidence to be used in prosecuting them.

The essential facts in the present case do not differ substantially from the cases cited by defendant, and this Court must, therefore, determine whether the same result should follow herein.

In *Marchetti* and *Grosso* the federal wagering tax statutes, Int.Rev.Code of 1954, §§ 4401–4423, established a system of taxes and registration requirements. Persons who engaged in the business of accepting wagers were subject to an annual occupational tax, and an excise tax on bets they accepted. The registration requirements were ostensibly designed to facilitate the collection of these taxes. A person subject to the occupational tax had to register every year with the local director of the Internal Revenue Service by submitting a form declaring that he was in the business of accepting wagers and identifying his place of business and his employees and agents. The director was required to maintain a list of registrants for public inspection and to provide a copy upon request to local and state prosecutors. A revenue stamp denoting payment of the occupational tax also had to be "conspicuously" displayed in the registrant's place of business. Those subject to the tax were required to keep records of all wagers accepted, to allow inspection of their account books, and to file a monthly report of the extent of their wagering activities.

Marchetti was convicted of failing to register and pay the occupational tax. Grosso was convicted of failing to pay the occupational and excise taxes. On certiorari, the Supreme Court reversed the convictions. Mr. Justice Harlan in writing for the majority in both cases overruled two earlier decisions to hold that the Fifth Amendment right is a complete defense to prosecutions for noncompliance with federal gambling tax and registration requirements since compliance would have created substantial risks of conviction for violation of federal and state gambling laws. In *Marchetti* the Court held that because of the "comprehensive system of federal and state prohibitions against wagering," disclosure of gambling activity would generally disclose a violation of federal or state law. In addition, the likelihood of prosecution and conviction was enhanced by the statutory requirement that the Internal Revenue Service turn over to law enforcement officers, on request, the identity of the registrants, and further, by the fact that evidence of the possession of revenue stamps and payment of the occupational tax was often admitted at the trial itself. *See* Irvine v. California, 347 U.S. 128, 74 S.Ct. 381, 98 L.Ed. 561 [1954]. Although there was no similar statutory requirement that the Internal Revenue Service disclose the identity of gamblers paying the excise tax, the Court in *Grosso* nevertheless held that the unrestricted availability of the information and its evident prosecutional use created substantial risks of self-incrimination.

The Supreme Court has traditionally refused to question the federal government's power to tax unlawful activity. *See* License Tax Cases, 72 U.S. [5 Wall.] 462, 18 L.Ed. 497 [1867]. However, it is obvious that since a predominately self-enforcing tax system will often require disclosure by taxpayers of their income generating activity, the taxation of unlawful conduct will sometimes conflict with the values protected by the taxpayer's Fifth Amendment right. In United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 [1927], a bootlegger, prosecuted for failing to file an income tax return, argued that filing a return would have tended to incriminate him by revealing the unlawful source of his income. The Court, in an opinion written by Justice Holmes, rejected defendant's contention and announced that extension of the Fifth Amendment's protection to a *complete failure to file* would not have been justified since most of the required disclosures would not have been incriminating. Unlike the defendant in that case, however, the defendant here did file returns and did answer all questions thereon which would not be incriminating. In addition, the *Sullivan* decision at least suggests that a taxpayer need not answer those questions which might be incriminating so long as he does answer those which are not. 274 U.S. at 263, 47 S.Ct. 607. It is true that the *Sullivan* case indicates the Fifth Amend-

ment right is waived unless it is claimed on the return itself in response to incriminating questions. However, even this might supply the first link in a chain of evidence against defendant, and *Marchetti* apparently modifies *Sullivan* in this regard, so that a taxpayer need not claim the Fifth Amendment right on the return itself. The cases of United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 [1953] and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 [1955], had extended *Sullivan* to prosecutions for noncompliance with federal gambling tax and registration requirements. In relying on *Sullivan, Kahriger* held that claim of the Fifth Amendment right did not protect the defendant from prosecution for complete failure to register. In *Lewis* the Court reasoned that since the threshold decision to gamble was voluntary, the required disclosures were not compulsory and therefore not violative of the Fifth Amendment right. Both *Kahriger* and *Lewis* held that the Fifth Amendment right was not available because it applied only to past and present conduct, and the required registration would disclose only planned or future activity.

*Marchetti* and *Grosso* rejected the reasons advanced in *Kahriger* and *Lewis*. The Court reasoned that unlike filing an income tax return, merely the submitting of the registration form required by the gambling tax laws would tend to incriminate the registrant by identifying him as a gambler, and, thus, the complete failure to file was excusable under the Fifth Amendment, protection against self-incrimination. The Court also dismissed Lewis' conclusion that the required disclosures were not compulsory, because in its view the important question was not whether the initial decision to gamble was voluntary, but whether, after that decision had been made, the taxpayer could then be compelled to incriminate himself. In addition the Court rejected the application and validity of any chronological restriction on the Fifth Amendment right. The Court concluded that the test in

applying the Fifth Amendment was not one of chronology but one of the risk of prosecution and conviction if the information sought is disclosed. In other words if the information could tend to incriminate the taxpayer for past, present *or* future activity, he should not be compelled to disclose it.

It is true that *Marchetti* and *Grosso* adopted the approach of Albertson v. Subversive Activities Control Board, 382 U.S. 70, 86 S.Ct. 194, 15 L.Ed.2d 165 [1965]. In the latter case the Court held that an order requiring registration by individual members of a Communist-action organization violated the members' privilege against self-incrimination. *Albertson, Marchetti* and *Grosso* all distinguished *Sullivan* on the grounds of the respective incriminating effects of the acts involved in the former cases as opposed to the incriminating effects of the reporting requirements of the income tax laws considered in the latter case. In the three former cases the Court found that where the reporting requirements focus upon criminal conduct and where the questioning is addressed primarily to a "group inherently suspect of criminal activities," the act of filing and claiming the privilege is inherently suspicious if not incriminating in and of itself, because the registrant thereby admits he is a member of the group engaged in unlawful conduct. But where the questions are imposed in "an essentially noncriminal and regulatory area of inquiry," as in *Sullivan*, filing a return lacks the incriminating potential to justify a complete failure to register.

■ However, the distinctions drawn by the Court between the *Marchetti, Grosso* and *Albertson* decisions and the *Sullivan* decision, do not fully apply in this case, because unlike *Sullivan*, Milder has filed returns and has answered all questions thereon which could not incriminate him. If he had then answered further and reported his embezzlement income, he would have been supplying information which would be incriminat-

ing, and the mere fact that the income tax laws are directed primarily at the public at large and thus lawful activity, rather than a particularized group engaged in illegal activity, does not resolve the problem posed by the Fifth Amendment. The Fifth Amendment protects each individual from being compelled to disclose to the government any evidence of a communicative or testimonial nature, which may have even so much as a *tendency* to incriminate him, or supplies a link in a chain of evidence against him. There can be little doubt, in this case, that had defendant reported his embezzlement income, such information would have had more than a tendency to incriminate him, and supplied the government with a link in a chain of evidence which could be used to prosecute him for embezzlement. In this regard Milder stands in the same shoes as did *Marchetti* and *Grosso*, in that he has now been prosecuted for refusing to relinquish his Fifth Amendment right not to be compelled to be a witness against himself.

The Court recognizes that there is a required records exception to the Fifth Amendment right, which was made clear by the United States Supreme Court in the case of Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 [1948]. In *Shapiro* the Court in affirming a conviction of violation of the Office of Price Administration's regulations against tie-in-sales, rejected the defendant's Fifth Amendment claim grounded upon his compelled production of records which the regulations required him to keep. The Court reasoned that since maintenance of the records was required by law, the records had acquired "public aspects" and were therefore unprotected by the Fifth Amendment. This record's doctrine thus allows statutory circumvention of the Fifth Amendment. Under this rule, if unrestricted, Congress could authorize in many areas the very abuses which the Fifth Amendment was designed to prevent. Yet allowance of the Fifth Amendment right in *Shapiro* would have undermined the effectiveness of an im-

portant government program. In *Marchetti* and *Grosso* the court distinguished *Shapiro* on what in Mr. Justice Harlan's words were its "three principal elements." First, he found that the registration requirements in *Marchetti* and *Grosso* were addressed to a select, suspect group, and not imposed in "an essentially non-criminal and regulatory area of inquiry." Second, he ruled that "whatever 'public aspects' there were to the records at issue in *Shapiro*," 390 U. S. at 57, 88 S.Ct. at 707, there were none to the information demanded of *Marchetti* and *Grosso*. Finally, he found that unlike *Shapiro*, *Marchetti* was not required to maintain records of a kind he "customarily kept."

The present case falls somewhere in between the *Marchetti* and *Grosso* cases and the *Shapiro* case. And, although it would be easy for this Court to say the present case is more like *Shapiro* than *Marchetti*, such a statement would not be entirely persuasive. This Court instead, is of the opinion that there is another and even sounder Constitutional basis for finding that the holdings of *Marchetti* and *Grosso* have no applicability to the present case, and for thus concluding that the defendant herein is not entitled to claim his Fifth Amendment right.

The taxes involved in *Marchetti* and *Grosso* were taxes imposed by Congress pursuant to Article I, § 8 of the United States Constitution, which provides:

"The Congress shall have Power To lay and collect Taxes, Duties, Imports and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imports and Excises shall be uniform throughout the United States."

This provision precedes the Fifth Amendment in the Constitution. And when Congress passes a taxing statute pursuant to the former Constitutional provision which requires disclosure of information which may be incriminating and therefore in conflict with the Fifth

Amendment, as between the two Constitutional provisions [the taxing provision and the Fifth Amendment right] the Fifth Amendment prevails because " * * * [i]f there be any conflict between * * * two provisions" in the Constitution " * * * the one found in the Amendments must control, under the well-understood rule that the last expression of the will of the lawmaker prevails over an earlier one." Schick v. United States, 195 U.S. 65, 68–69, 24 S.Ct. 826, 827, 49 L.Ed. 99 [1904]. See also Great Northern Utilities Co. v. Public Service Commission, 52 F.2d 802 [D.Mont. 1931]; affirmed 285 U.S. 524, 52 S.Ct. 313, 76 L.Ed. 921 [1933].

On the other hand in the present case, the taxing statutes and reporting requirements thereof are derived from the Sixteenth Amendment, which provides:

"The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration."

Since Congress was empowered "to lay and collect taxes on incomes, from whatever source derived," that power includes the power to impose reasonable reporting requirements on all individuals in regard to their sources of income, from any source, even illegal sources. Thus, it is at once apparent that there is a direct conflict between the Fifth and Sixteenth Amendments, for if Congress is to effectively collect taxes on income it must be able to require disclosure of the income and its sources, and if the source happens to be illegal its disclosure will undoubtedly have an incriminating effect upon the taxpayer.

This Court is of the opinion that the conflict must be resolved in favor of the Sixteenth Amendment, since it follows the Fifth Amendment " * * * [it is] the last expression of the will of the lawmaker * * * " and therefore " * * * prevails over an earlier one." Schick, supra, 195 U.S. at 68–69, 24 S.Ct. at 827.

Of course, in holding that the Fifth Amendment right not to incriminate oneself must give way under the facts and circumstances of this case, the Court cannot deny that it is influenced by the practical difficulties which might ensue from a contrary holding. If one man could refuse to file an income tax return or refuse to report a substantial amount of his income, then there are others who could and would do the same, and the federal income tax system would ultimately fall in a shambles, with catastrophic effects upon the whole nation. Since the recognition of the Fifth Amendment right, in cases such as this, could very well make enforcement of the income tax laws impossible, the view that the Sixteenth Amendment, being the later expression of the people, should not be limited in any manner by the Fifth Amendment, is strengthened.

The words of Chief Justice Marshall in the case of United States v. Burr, 25 F.Cas. pp. 38, 39–40 [No. 14,692e] [C. C.D.Va.1807], seem particularly apropos here. He said:

"When two principles come in conflict with each other, the court must give them both a reasonable construction, so as to preserve them both to a reasonable extent. The principle which entitles the United States to the testimony of every citizen, and the principle by which every witness is privileged not to accuse himself, can neither of them be entirely disregarded."

Neither can the principle which entitles the United States to lay and collect income taxes from whatever source derived be disregarded, and in this case that principle prevails. Accordingly,

It is ordered that defendant's motion for new trial should be and is hereby overruled.