**Frank ZIZZO, Petitioner-Appellant,**

v.

**UNITED STATES of America,
Respondent-Appellee.**

**No. 18168.**

United States Court of Appeals,
Seventh Circuit.

Sept. 8, 1971.

Rehearing Denied Sept. 28, 1971.

Carl M. Walsh, Maurice J. Walsh, Chicago, Ill., John Kappos, Gary, Ind., for petitioner-appellant.

Mervyn Hamburg, Appellate Section, Criminal Division, U. S. Department of Justice, Washington, D. C., William C. Lee, U. S. Atty., Richard L. Keiser, Asst. U. S. Atty., Fort Wayne, Ind., for respondent-appellee.

Before SWYGERT, Chief Circuit Judge, MURRAH, Senior Circuit Judge [1] and CAMPBELL,[2] Senior District Judge.

CAMPBELL, Senior Judge.

This cause is again before this court on order of the Supreme Court vacating our judgment previously entered and remanding the case for reconsideration in light of the Supreme Court's views expressed in Mackey v. United States, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404, on April 5, 1971. Counsel have filed new briefs with us explaining their differing interpretations of those differing views.

Frank Zizzo was convicted in 1963 of traveling in interstate commerce with intent to carry on a business enterprise involving gambling illegal under the laws of Indiana. 18 U.S.C. § 1952. In the course of his original trial and over his objection federal wagering tax forms signed and filed by him as required by law (26 U.S.C. §§ 4401, 4411 and 4412) were introduced into evidence. That conviction was affirmed by this court.

1.  Senior Circuit Judge Murrah of the United States Court of Appeals for the Tenth Circuit is sitting by designation.

2.  Senior District Judge Campbell of the Northern District of Illinois is sitting by designation.

United States v. Zizzo, 338 F.2d 577 (7th Cir. 1964). Zizzo subsequently filed a motion, pursuant to 28 U.S.C. § 2255 and other post conviction relief provisions, seeking to vacate the prior imposed sentence and judgment of conviction. In that post conviction petition, Zizzo relied on the opinions of the Supreme Court in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L. Ed.2d 889 (1968); and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 (1968), which held that the Fifth Amendment privilege against compulsory self-incrimination was a valid defense to a prosecution for failure to register as a gambler and to pay the related occupational and gambling excise taxes under 26 U.S.C. §§ 4401, 4411 and 4412. Essentially Zizzo argued that under the reasoning of the Supreme Court's decisions in Marchetti and Grosso the introduction into evidence of his gambling tax returns violated his Fifth Amendment privilege against self-incrimination. He also argued that those decisions should be applied retroactively thus requiring that his original conviction be vacated.

We agreed with these contentions and vacated the judgment of conviction. Zizzo v. United States, 431 F.2d 913 (7th Cir. 1970). In reaching our conclusion that the Marchetti and Grosso decisions should be applied retroactively to Zizzo's case, we noted that the Supreme Court had not yet ruled on the question, and that the issue was then before the Court in certain cases awaiting argument, particularly United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 and Mackey v. United States. Those cases were both decided on April 5, 1971. This cause, then pending on the government's petition for certiorari, was remanded for reconsideration in light of Mackey.

Upon remand we have so reconsidered our decision and determine, contrary to our prior opinion, that the Marchetti and Grosso decisions should not be applied retroactively to void Zizzo's original conviction.

The Mackey case also originated in this Circuit pursuant to a motion to vacate a judgment of conviction. See 411 F.2d 504. Mackey was convicted of income tax evasion. His prosecution proceeded upon a net worth theory, under which the government was required to prove a likely source giving rise to the unreported income. The probable source of Mackey's unreported income was gambling. To prove this source the government offered into evidence numerous wagering tax returns filed by Mackey during the years in question.

Mackey's theory, similar to Zizzo's, was that the Fifth Amendment barred the prosecution's use of the wagering tax forms. This theory was rejected by both the district court and this court. The Supreme Court affirmed, holding that Marchetti and Grosso should not be applied retroactively to vacate the conviction in that case. The prevailing opinion was written by Mr. Justice White who was joined by the Chief Justice and Justices Stewart and Blackmun. That opinion clearly calls for a similar denial of post conviction relief in this case. The following observations from that opinion are particularly applicable.

"There is no indication in Marchetti or Grosso that one of the considerations which moved the Court to hold that the Congress could not constitutionally compel citizens to register as gamblers and file related tax returns was the probable unreliability of such statements once given. Petitioner has not advanced any objective considerations suggesting such unreliability. The wagering tax returns introduced in evidence at his trial have none of the characteristics, and hence none of the potential unreliability, of coerced confessions produced by 'overt and obvious coercion.' Johnson [v. New Jersey], 384 U.S. [719], at 730, 86 S.Ct. [1772], at 1779 [16 L.Ed.2d 882]. Nor does Mackey suggest that his returns—made under oath—were inac-

curate in any respect. Thus, a gambling excise tax return, like physical evidence seized in violation of a new interpretation of the Fourth Amendment, is concededly relevant and probative even though obtained by the Government through means since defined by this Court as constitutionally objectionable. As in *Desist* [Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248], *Elkanich* [Elkanich v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388], and *Williams* [Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed. 2d 388], the result here should be that a pre-*Marchetti* trial in which the Government employed such evidence is not set aside through retroactive application of the new constitutional principle." (401 U.S. at 674-675, 91 S.Ct. at 1164).

Even more persuasive is Mr. Justice White's dissenting opinion in United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L. Ed.2d 434, again joined in by the Chief Justice and Justices Stewart and Blackmun. In proposing a hypothetical tailor made to our case, Justice White states:

"Had Angelini registered and paid the federal tax and then been tried prior to *Marchetti-Grosso* for violating federal interstate gambling laws or state laws making gambling a crime, the admissions contained in his registration and gambling tax returns would have been relevant and presumptively reliable evidence of guilt, properly admissible under *Kahriger* [United States v. Kahriger, 345 U.S. 22, 73 S. Ct. 510, 97 L.Ed. 754] and *Lewis* [Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475]. And if after *Marchetti-Grosso,* Angelini had complained about the use of this evidence, Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), and Johnson v. New Jersey, 384 U.S. 719, 732, 86 S. Ct. 1772, 1780, 16 L.Ed.2d 882 (1966), would surely dictate denial of relief whether Angelini came here on direct review of his conviction or from denial of collateral relief." (401 U.S. at 733, 91 S.Ct. at 1051).

On the other hand, Justices Black and Douglas who dissented in *Mackey* would clearly affirm our decision ·giving *Marchetti* and *Grosso* broader retroactive sweep. Justices Brennan and Marshall voted with the majority in *Mackey,* but would apparently distinguish the *Zizzo* case from *Mackey* on the same basis as we did in our original opinion, that is that *Zizzo,* unlike *Mackey,* was convicted of a gambling related offense and the purpose of *Marchetti-Grosso* was, "to protect the individual against self-incrimination under the comprehensive system of federal and state prohibitions against wagering activities." 431 F.2d at 916. In the opinion written by Mr. Justice Brennan, in which Justice Marshall concurred, there is reference to the fact that the *Mackey* case, "does not involve a prosecution for gambling or related activities." The opinion then observes:

"If such a reporting requirement raises a substantial danger of incrimination under state or federal statutes making criminal the activity that is being taxed, an individual may, of course, assert the privilege against self-incrimination and refuse to disclose the information sought. We so held in *Marchetti* and *Grosso.* And if the information has been compelled over a claim of privilege, application of those cases requires that the individual be protected against the use of that information in state prosecutions under the statutes making criminal the taxed activity, and to complete immunity from prosecution under federal statutes of like kind." (401 U.S. at 710, 91 S.Ct. at 1169).

With the Court thus potentially divided at 4-4, the swing vote appears to be that of Mr. Justice Harlan, who wrote the majority opinion in *United States Coin and Currency* and an extensive concurring opinion in *Mackey.* Justice Harlan it seems would first distinguish between the cases coming before the

**860**

Court on direct review and those on collateral review. In those cases coming on collateral review, i. e. habeas corpus, Justice Harlan states that it is sounder, "generally to apply the law prevailing at the time a conviction became final than it is to seek to dispose of all of these cases on the basis of intervening changes in constitutional interpretation." 401 U.S. at 689, 91 S.Ct. at 1178. In other words, if a conviction was valid at the time it became final, Justice Harlan would not disturb that conviction upon collateral review based on changes in constitutional law, except that, "New 'substantive due process' rules, that is, those that place, as a matter of constitutional interpretation, certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to prescribe," would be given retroactive effect. He would also grant retroactive application to those claims of nonobservance of basic procedures that are, "implicit in the concept of ordered liberty." Id. at 692–693, 91 S.Ct. at 1180.

Applying these principles, Justice Harlan voted for retroactive application of *Marchetti-Grosso* in *United States Coin and Currency*, because that case involved the crime of failure to register under the statute—conduct which the Court had concluded was beyond the power of Congress to punish. In distinguishing *Mackey*, Justice Harlan writes:

> "In this regard, Mackey's claim differs from that raised by the respondent in *Coin and Currency*, also decided today, where *Marchetti* and *Grosso* do operate to render Congress powerless to punish the conduct there at issue. Instead, *Mackey's* claim is that the procedures utilized in procuring his conviction were vitiated by the *Marchetti* and *Grosso* decisions. Since matters of procedure rather than substance are involved, * * * I would apply to the resolution of this habeas petition the law in effect at the time *Mackey's* conviction became final, absent a showing that the procedures employed were fundamentally unfair."

(401 U.S. at 700–701, 91 S.Ct. at 1184).

It seems to us if this case were decided when it was before the Supreme Court Justice Harlan would have concluded that like *Mackey* it involves only procedures utilized in procuring a conviction and he would therefore have voted to apply to the resolution of this habeas petition the law in effect at the time the conviction became final. Under that law the admission into evidence of the wagering returns would not be error.

Accordingly, the decision of the district court denying the motion to vacate the judgment of conviction is at long last affirmed.