**Jose Manuel Quijada GAXIOLA,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 72–2319.**

United States Court of Appeals,
Ninth Circuit.

June 1, 1973.

Jerry M. Stewart, Phoenix, Ariz., for appellant.

William C. Smitherman, U. S. Atty., Morton Sitver, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

OPINION

Before CHAMBERS, BROWNING and ELY, Circuit Judges.

ELY, Circuit Judge:

Gaxiola was convicted after pleading guilty to the charge of importing marijuana without paying a tax required un-

der 26 U.S.C. § 4744(a). He contends [1] that he should be afforded an opportunity to plead anew because (1) he did not knowingly and intelligently waive his right to claim the privilege against self-incrimination as a complete defense to the marijuana tax charge since that right was not established until one year after his plea was entered (Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L. Ed.2d 57 (1969)); and, (2) he was denied effective assistance of counsel by virtue of his attorney's failure to advise him "that there was a case pending in the United States Supreme Court (Leary v. United States, *supra*) which afforded him the right to claim the privilege against self-incrimination" as a complete defense to the marijuana tax charge.

In reviewing the District Court's determination that "petitioner waived any possible self-incrimination privilege by his plea of guilty," we note that the Supreme Court has recently addressed itself to this issue. In Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed. 2d 235 (1973), the Court held that an accused in state criminal proceedings, who, unaware of unconstitutional grand jury discrimination and his right to challenge it, pleaded guilty to a murder

charge on the advice of counsel cannot obtain release through federal habeas corpus by proving only that the indictment to which he pleaded was returned by an unconstitutionally selected grand jury. The Court held that a guilty plea represents a "break in the chain of events which preceded it in the criminal process" and that, as a consequence, the issue is not the merits of the constitutional claims as such, but rather, whether the advice received from counsel fell within the standards set forth in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

"In the instant case, the facts relating to the selection of the Davidson County grand jury in 1948 were found by the District Court and the Court of Appeals to have been unknown to both respondent and his attorney. If the issue were to be cast solely in terms of 'waiver,' the Court of Appeals was undoubtedly correct in concluding that there had been no such waiver here.[2] But just as the guilty pleas in the *Brady* trilogy (Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970);

1. Gaxiola's motion to vacate judgment, originally filed as a Writ of Error Coram Nobis, was correctly treated by the District Court as a motion for relief under 28 U.S.C. § 2255. The Government, following the District Court's grant of the motion in favor of Gaxiola, appealed. We reversed the order, remanding the case for an evidentiary hearing on two issues that had not been decided by the District Court. Quijada Gaxiola v. United States, 435 F.2d 264 (9th Cir. 1970). The hearing resulted in determinations adverse to Gaxiola, and the present appeal followed.

2. In *Tollett, supra,* the Court reversed the Court of Appeals' decision that "where both petitioner and counsel are without knowledge of a substantial constitutional right that right is not waived even by a guilty plea." Henderson v. Tollett, 459 F.2d 237, 243 (6th Cir. 1972). The Sixth Circuit had based its reasoning on a line of cases holding that a petitioner could not knowingly relinquish a right of which he was unaware at the time of his plea.

Bannister v. United States, 446 F.2d 1250 (3d Cir. 1971); Scogin v. United States, 446 F.2d 416 (8th Cir. 1971); United States v. Liguori, 430 F.2d 842 (2d Cir. 1970), cert. denied, 402 U.S. 948, 91 S.Ct. 1614, 29 L.Ed.2d 118 (1971); United States v. Michael, 426 F.2d 1067 (7th Cir. 1970). *Cf.* Castro v. United States, 403 U.S. 903, 91 S.Ct. 2215, 29 L.Ed.2d 678 (1971), 436 F.2d 975 (9th Cir. 1971); Weber v. United States, 402 U.S. 939, 91 S.Ct. 1633, 29 L.Ed.2d 107 (1971), vacating United States v. Weber, 429 F.2d 148 (9th Cir. 1970); Cochran v. United States, 402 U.S. 939, 91 S.Ct. 1634, 29 L.Ed.2d 107 (1971), 432 F.2d 1356 (9th Cir. 1970); Brunel v. United States, 450 F.2d 952 (9th Cir. 1971); United States v. Dix, 449 F.2d 1373 (9th Cir. 1971); Navarro v. United States, 449 F.2d 113 (9th Cir. 1971); United States v. Jones, 447 F.2d 991 (9th Cir. 1971); United States v. Ingman, 426 F.2d 973 (9th Cir. 1970); Meadows v. United States, 420 F.2d 795 (9th Cir. 1969).

and Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970)) were found to foreclose direct inquiry into the merits of claimed antecedent constitutional violations there, we conclude that respondent's guilty plea here alike forecloses independent inquiry into the claim of discrimination in the selection of the grand jury."

Tollett v. Henderson, *supra* 411 U.S. at 266, 93 S.Ct. at 1607.

■ Thus, the fact that Gaxiola did not foresee the fifth amendment defense at the time he entered his plea does not, of itself, establish an adequate basis for the reversal of the Order here challenged.[3] Our inquiry must therefore shift to an examination of the nature of the advice Gaxiola received and the voluntariness of his plea.

For the purposes of deciding Gaxiola's sixth amendment contention, the focus must necessarily be upon the conduct and advice of Gaxiola's appointed counsel. The District Court found that Gaxiola was "exceptionally well represented" and that, at the time the plea was entered, his counsel was aware of the *Marchetti* trilogy [4] which supplied the principal basis of the Supreme Court's subsequent decision in *Leary*. Accordingly, the District Court determined that Gaxiola's sixth amendment claim was "frivolous and without merit."

Nothing in the record suggests that the defense attorney's recommendation that Gaxiola accept the plea arrangement was not "reasonably competent" advice. McMann v. Richardson, 397 U.S. at 770, 90 S.Ct. 1441. Plea bargain judgments involve difficult assessments concerning the weight of the Government's case and the desirability of the offered exchange and, accordingly, a review of their effectiveness "depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases. *Id.*

"A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement, such as unconstitutional grand jury selection procedures, might be factually supported."

Tollett v. Henderson, *supra,* 411 U.S. at 268, 93 S.Ct. at 1608.

■ Here, the record reveals that the marijuana tax charge was added to the indictment as a result of plea bargaining in which the Government agreed to abandon the original two counts charging il-

3. In Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, the Supreme Court held that:

"A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly . . . a voluntary plea of guilty intelligently made in the light of *then applicable law* does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise."

397 U.S. at 757, 90 S.Ct. at 1473 (emphasis added).

4. The *Marchetti* trilogy (Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697,

19 L.Ed.2d 889 (1968) ; Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968)) held that the Fifth Amendment provides a complete defense to prosecutions under 26 U.S.C. §§ 4411 and 4412 (conspiring to evade payment of the occupational tax relating to wagers), 26 U.S.C. §§ 4401 and 4411 (failure to pay the excise and occupational tax imposed on wagering), and 26 U.S. C. §§ 5841 and 5851 (knowingly possessing a defined firearm that had not been registered, or possessing a defined firearm without its registration). This line of cases set the stage for the Supreme Court's 1969 decision in Leary v. United States, *supra.*

legal importation of heroin and marijuana (21 U.S.C. §§ 174, 176(a)) in exchange for Gaxiola's plea of guilty to the tax count. Thus, "while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel", *Tollett, supra,* 411 U.S. at 267, 93 S.Ct. at 1608, it would have apparently been fruitless for Gaxiola's counsel to explore possible defenses to the marijuana transfer charge because Gaxiola, in the plea bargaining process, was not presented with the alternative of defending against that charge. Had any defense to the tax count been attempted, the plea bargain would have evaporated, leaving Gaxiola to risk the far more serious consequences flowing from his possible conviction of heroin and marijuana importation.[5]

> "The principal value of counsel to the accused in a criminal prosecution often lies not in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law."

*Tollett v. Henderson, supra* at 267, 93 S.Ct. at 1608.

Furthermore, our review of the record convinces us that Gaxiola, acting through his attorney, made a strategic decision deliberately to by-pass the possible defenses to the section 4744(a) charge in an effort to gain the perceived advantages of the plea bargain. These kinds of strategic decisions are not necessarily inconsistent with traditional notions of voluntariness:

> "We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."

*Brady, supra,* 397 U.S. at 751, 90 S.Ct. at 1470.

Accordingly, we agree with the District Court that the legal advice given to Gaxiola was well within the required range of competence, and that the plea was voluntarily entered.

■ Finally, an accused who has received the guidance of competent counsel should not be allowed to disown voluntary admissions in open court unless there is cause "to question (their) accuracy and reliability." *Id.* at 758, 90 S.Ct. at 1474. Nothing in the present record intimates that Gaxiola's admissions fall within that category.[6]

Affirmed.

---

5. Conviction of the heroin importation charge, for example, carried a minimum sentence of five years and a maximum of twenty years, and, under 26 U.S.C. § 7237(d), as it then read, a person so convicted was ineligible for parole. In contrast, the charge to which Gaxiola pleaded guilty carried a minimum sentence of two and a maximum of ten years and did not preclude parole.

6. In the circumstances of this case, we can perceive no utility in remanding for an evidentiary hearing. The record clearly demonstrates that Gaxiola received the effective assistance of counsel and that he voluntarily entered a guilty plea that presents no doubts of accuracy or reliability. Had we detected any substantial reason to question these findings, the remanding of the cause for an evidentiary hearing to resolve the issues would have been required.