George J. **BLUSO**

v.

**UNITED STATES of America.**

Crim. No. 25933.

United States District Court,
D. Maryland.

May 8, 1974.

Martin A. Ferris, III, Baltimore, Md., for petitioner.

George Beall, U. S. Atty., and Donald H. Feige, Asst. U. S. Atty., Baltimore, Md., for respondent.

THOMSEN, Senior District Judge.

Petitioner (Bluso) seeks a writ of error coram nobis to vacate and set aside the judgment of conviction and sentence entered herein on August 14, 1964, to remand the fine imposed and to dismiss the indictment. In the alternative, he asks that his plea of guilty to certain counts of the indictment "be withdrawn in accordance with Rule 32(d)", F.R. Crim.P., and that the judgment of conviction be "reversed".

*Historical Facts*

On May 31, 1962, the Grand Jury for the District of Maryland charged Bluso and a codefendant in a seven count indictment with a conspiracy to violate and six substantive violations of the wagering tax laws.[1]

---

1. 1st Count—Conspiracy to evade and defeat the excise tax on wagers imposed by 26 U. S.C. § 7201, in violation of 18 U.S.C. § 371. Possible penalty, 5 years or $10,000 or both.

2nd Count—Attempting to evade or defeat said tax, 26 U.S.C. § 7201. 5 years or $10,000 or both, together with costs of prosecution.

After mesne proceedings irrelevant to the present issues, able and experienced counsel for Bluso entered into plea bargaining negotiations with the United States Attorney and his Assistants, which resulted in an agreement: (1) that Bluso would enter pleas of guilty to Counts 3, 4 and 6, which together permitted only a one year sentence plus fines and a penalty, and (2) that the government would nol pros the remaining counts, some of which carried much heavier prison sentences. See n. 1, above.

The arrangement appeared so favorable to Bluso that the court required a full disclosure and discussion of the facts, as well as assuring itself that the pleas were voluntarily entered.

After accepting the pleas of guilty to Counts 3, 4 and 6, and conducting a sentencing hearing, the court imposed total sentences of one year's imprisonment, non-cumulative fines of $5,000, and a $50 penalty. A nolle prosequi of the other counts was entered by the government and accepted by the court.

Bluso served his sentence and has paid part of his fine. His present petition was filed on September 19, 1970, but was not pressed until August 1973, when Bluso's present counsel filed a full memorandum in support of his petition, which has been answered by the government.

*The Development of the Law on the Questions Presented*

At the time Bluso's pleas were entered, the Supreme Court had twice concluded that the privilege of self-incrimination could not appropriately be asserted by those in Bluso's circumstances. United States v. Kahriger, 345 U.S. 22,

73 S.Ct. 510, 97 L.Ed. 754 (1953); Lewis v. United States, 348 U.S. 419, 75 S. Ct. 415, 99 L.Ed. 475 (1955). Those decisions were applied by the trial and appellate courts in United States v. Costello, Marchetti, et al., 352 F.2d 848 (2 Cir. 1965), and United States v. Grosso, 358 F.2d 154 (3 Cir. 1966). On January 29, 1968, the Supreme Court decided Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889, and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906. The decisions were carefully summarized by Judge Winter in Greenwood v. United States, 392 F.2d 558 (4 Cir. 1968), as follows:

"In *Marchetti,* the Court decided that the privilege against self-incrimination, properly asserted, was a complete defense against prosecution for failure to pay the annual occupation tax on wagering imposed by 26 U.S. C.A. § 4411 and a wilful failure to register as required by 26 U.S.C.A. § 4412 before engaging in the business of accepting wagers. In *Grosso,* the Court decided that a taxpayer may not be convicted of conspiracy to evade payment of the excise tax imposed on wagering by 26 U.S.C.A. § 4401, 'if the constitutional privilege [the privilege against self-incrimination] would properly prevent his conviction for wilful failure to pay it.' The Court also applied the same doctrine to a conspiracy to evade payment of the special occupational tax imposed by 26 U.S.C.A. § 4411. United States v. Kahriger, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953), and Lewis v. United States, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955) were both overruled in *Marchetti,* to the extent that they precluded assertion of the constitutional privilege as a defense to the indictments in that case and impliedly

3rd Count—Failure to file wagering excise tax return. 26 U.S.C. § 7203. 1 yr. or $10,000 or both, and costs of prosecution.

4th Count—Receiving wagers without paying the special occupational tax imposed by 26 U.S.C. § 4411, 26 U.S.C. § 7262. $1,000 to $5,000.

5th Count—Failure to pay said tax before engaging in the business. 26 U.S.C. § 7203.

1 yr. or $10,000 or both and costs of prosecution.

6th Count—Failure to register, as required by 26 U.S.C. § 4412, 26 U.S.C. § 7272. $50.

7th Count—Failure to supply information required by 26 U.S.C. § 4412, 26 U.S.C. § 7203. 1 yr. or $10,000 or both and costs of prosecution.

they received like treatment in *Grosso*." 392 F.2d at 559.[2]

The Court then noted that in *Greenwood* the indictments were like those in *Grosso*, and said:

"* * * It follows that the Fifth Amendment privilege was a complete defense if properly asserted. Neither by pre-trial motion nor during the trial did Greenwood or Lunsford assert the privilege, except that they declined to testify at their trial. They raised it first in their briefs in this Court. But their failure to do so in the district court was in the context of *Kahriger* and *Lewis*, which, until January 29, 1968, were eroded but not scrapped. As in *Grosso*, we do not, therefore, treat their failure to assert the issue as an effective waiver of the constitutional issue, and our examination of the record fails to disclose any other evidence on which a finding of waiver of the privilege against self-incrimination may be based. We reverse the judgments and direct the entry of judgments of discharge." 392 F.2d at 559.

The third case in the so-called *Marchetti* trilogy was Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923, also decided on January 29, 1968, in which analogous principles were applied to a prosecution under the National Firearms Act. In United States v. Miller, 406 F.2d 1100 (1969), the Fourth Circuit held that *Haynes* should be applied retroactively.

In United States v. United States Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971), the Court held that the *Marchetti-Grosso* rule had retroactive effect in a forfeiture proceeding under 26 U.S.C. § 7302. Shortly thereafter the Court vacated and remanded a number of cases for reconsideration in the light of *Coin and Currency*.[3] See 402 U.S. 937–939.

Since the *Coin and Currency* decision, courts in four circuits have considered coram nobis proceedings to strike convictions in wagering tax cases and to repay the fines. DeCecco v. United States, 485 F.2d 372 (1 Cir. 1973); United States v. Summa, (2 Cir. 1973), affirming 362 F.Supp. 1177 (D.Conn.1972); United States v. Lewis, 478 F.2d 835 (5 Cir. 1973); Pasha v. United States, 484 F.2d 630 (7 Cir. 1973). In each case the court held that the petitioner's conviction should be vacated and his fine repaid.

In three of the four cases, *Lewis*, *Summa* and *DeCecco*, the petitioners had entered guilty pleas; but in none of those decisions did either the district court or the court of appeals discuss or cite the opinion of the Supreme Court in Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), discussed below, which considered in depth the effect of a guilty plea by a criminal defendant. The apparent reason for those courts not having discussed or cited *Tollett* is that the decisions in the district courts were rendered before *Tollett* was decided, and that the government did not raise the point on appeal.[4]

In *Tollett* the Court considered the case of a man who, in 1948, in Tennessee, had plead guilty to a murder charge on the advice of his counsel. At the time he entered his plea he and his counsel were unaware of the facts relating to the selection of the grand jury which would have supported a challenge to the indictment. The Court said:

"* * * If the issue were to be cast solely in terms of 'waiver,' the

---

2. See also the summary of those decisions in Higginbotham v. United States, 491 F.2d 432 (4 Cir. 1974).

3. Some of the cases remanded were wagering tax cases and some were firearm or drug cases.

4. The opinions in *Lewis* and *DeCecco* dealt only with the propriety of using a coram nobis proceeding to secure repayment of a fine. The order affirming the district court in *Summa* did so on the district court's opinion, which was rendered before the decision in *Tollett*, and upon the authority of *Lewis*, which, as noted above, did not discuss *Tollett* or the effect of the guilty plea.

Court of Appeals was undoubtedly correct in concluding that there had been no such waiver here. But just as the guilty pleas in the *Brady* trilogy were found to foreclose direct inquiry into the merits of claimed antecedent constitutional violations there, we conclude that respondent's guilty plea here alike forecloses independent inquiry into the claim of discrimination in the selection of the grand jury.

" * * * If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advise was not 'within the range of competence demanded of attorneys in criminal cases,' McMann v. Richardson, *supra*, [397 U.S. 759] at 771 [90 S.Ct. 1441, 25 L.Ed.2d 763]. Counsel's failure to evaluate properly facts giving rise to a constitutional claim, or his failure properly to inform himself of facts that would have shown the existence of a constitutional claim, might in particular fact situations meet this standard of proof. Thus while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief.

"We thus reaffirm the principle recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

"A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional

plea in abatement he might have to the charge, * * *.

"The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, see Brady v. United States, *supra*, [397 U.S. 742] at 751–752, [90 S.Ct. 1463, 25 L.Ed.2d 747], or by contesting all guilt, see Santobello v. New York, 404 U.S. 257, [92 S.Ct. 495, 30 L.Ed.2d 427] (1971). A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement, such as unconstitutional grand jury selection procedures, might be factually supported." 411 U.S. at 266–268.

In Gaxiola v. United States, 481 F.2d 383 (1973), the Ninth Circuit followed *Tollett* in refusing to set aside a guilty plea which was entered by a defendant in a marijuana tax case before the decision of the Supreme Court in Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). The Ninth Circuit agreed with the district court that the legal advice given to Gaxiola was well within the required range of competence, and that the plea was voluntarily entered.

*Application of the Law to the Facts of this Case*

■■ In his petition Bluso has not challenged the adequacy of representation by his counsel and it appears from the record that Bluso was capably repre-

sented by able counsel, who secured for him a favorable plea bargain. They were faced with the decisions of the Supreme Court in *Kahriger* and *Lewis,* and had no reason to believe that those decisions would be overruled. Therefore, in the light of the principles stated in *Tollett,* this court should not vacate Bluso's guilty plea nor order that his fine be repaid. Nor should he be allowed to withdraw his plea at this time. [5]

Bluso's petition for a writ of error coram nobis is accordingly denied.

5. The underlying rationale of those decisions that have permitted criminal defendants to withdraw their guilty pleas or have vacated those pleas under circumstances analogous to Bluso's has been that it is impossible to waive an unknown right and, therefore, the guilty plea cannot be deemed to have been properly informed or voluntary. United States v. Lewis, 342 F.Supp. 833, at 835, and United States v. Summa, 362 F.Supp. at 1179–1180. The controlling standard for the waiver of a constitutional right relied upon by those courts was "an intentional relinquishment or abandonment of a known right or privilege", Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L. Ed. 1461 (1938). However, Tollett v. Henderson makes it clear that merely because a criminal defendant who has entered a guilty plea cannot be said to have validly waived a constitutional right, it does not automatically follow that such plea should be permitted to be withdrawn or vacated upon the asesrtion, years after the guilty plea and sentencing, of the denial of a constitutional right that antedated the plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Bluso has not met this test.