**UNITED STATES of America**

v.

**William SAMS et al.**

**Appeal of Victor CARLUCCI.**

**No. 75–1023.**

United States Court of Appeals, Third Circuit.

Argued April 28, 1975.

Decided Aug. 4, 1975.

422

Irving M. Green, New Kensington, Pa., for appellant.

Richard L. Thornburgh, U. S. Atty., Henry G. Barr, Asst. U. S. Atty., John C. Kenney, Acting Asst. Atty. Gen., Robert L. Kruch, Edward S. Christenbury, Larry L. Gregg, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before VAN DUSEN, ADAMS and GARTH, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The two principal issues to be resolved on this appeal are:

1. Whether a district court may, on a *coram nobis* petition, annul a conviction under the federal wagering tax statutes when the conviction is based on a guilty plea entered prior to the time the Supreme Court held that the privilege against self incrimination furnished a complete defense against such charges; and

2. Whether the petition here presents a claim for the return of the fine imposed as a result of a conviction under the wagering tax statutes that is barred by the statute of limitations.

### I.

On February 18, 1963, Victor Carlucci pleaded guilty to two counts of willful failure to pay the special federal occupational tax imposed on wagering.[1] As a result, he was sentenced to pay a fine of $10,000.

In *Marchetti v. United States*[2] and *Grosso v. United States*,[3] both decided January 26, 1968, the Supreme Court held that the framework of federal wagering tax statutes "may not be employed to punish criminally those persons who have defended a failure to comply

with their requirements with a proper assertion of the privilege against self-incrimination."[4] Overruling their decisions in *Kahriger*[5] and *Lewis*,[6] the Court declared that the practice of gambling was so permeated with criminal prohibitions that prosecution for failure to comply with the requirements of the federal gambling tax statutes would encroach upon the Fifth Amendment's protection against compulsory self-incrimination.

Subsequently, in *United States v. United States Coin and Currency*[7] the Supreme Court ruled that the *Marchetti* and *Grosso* decisions should be given retroactive effect to invalidate a forfeiture proceeding. Donald Angelini had been convicted of not registering as a gambler and not paying the federal gambling tax. The government, prior to the Court's decisions in *Marchetti* and *Grosso* commenced forfeiture proceedings with respect to $8,674 which Angelini had in his possession at the time of his arrest. The Supreme Court held that the doctrine of *Marchetti* and *Grosso* should be applied to reverse the judgment of forfeiture.

This was the background when, almost eleven years after his conviction, Carlucci, in June, 1974, filed an application for a writ of error *coram nobis*. Carlucci requested that the district court vacate, annul and set aside his conviction and refund the fine paid. He predicated his application on the Fifth Amendment, the All Writs Act[8] and section 1346(a)(2) of

---

1. Carlucci was convicted of violating 26 U.S.C. § 7203. He was indicted under 26 U.S.C. §§ 7201, 7262 and 18 U.S.C. § 371 as well. All of the allegations of the indictment related to his failure to pay special taxes on wagering. *See* 26 U.S.C. §§ 4401, 4411. *See also* 26 U.S.C. § 4412 mandating all persons required to pay the tax under § 4411 to register with the Internal Revenue Service. For a description of the statutory scheme for taxing wagers, see *Marchetti v. United States*, 390 U.S. 39, 42–44, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and *Grosso v. United States*, 390 U.S. 62, 65–66, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

2. 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889.

3. 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906. *See also Haynes v. United States*, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968) (invalidat-

ing federal fire-arm registration statutes on similar self-incrimination grounds); *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) (striking down the marihuana transfer tax for the same reason).

4. *Marchetti*, 390 U.S. at 42, 88 S.Ct. at 699.

5. *United States v. Kahriger*, 345 U.S. 22, 73 S.Ct. 510, 97 L.Ed. 754 (1953).

6. *Lewis v. United States*, 348 U.S. 419, 75 S.Ct. 415, 99 L.Ed. 475 (1955).

7. 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971).

8. 28 U.S.C. § 1651(a) provides:

    "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respec-

the Tucker Act.[9] The district court denied all the relief sought. It reasoned that by entering a guilty plea Carlucci had waived any defense under the Fifth Amendment, and that because there was no congressional waiver of sovereign immunity, the court had no authority to order a return of the fine.

## II.

On this appeal Carlucci contends that under *Marchetti* and *Grosso* the Fifth Amendment provides an absolute bar to his conviction, and that the principle of those cases should be applied retroactively. Carlucci further maintains that since at the time of his conviction he could not have known that the prosecution ran afoul of the Constitution, his plea of guilty was not knowing and voluntary, and therefore his conviction should be vacated.

In addition, the Tucker Act, according to Carlucci, affords the district court the power to order his fine refunded, and a *coram nobis* proceeding is a proper occasion upon which to present his demand for the return of the money unconstitutionally taken from him. Finally, Carlucci argues that since he could not have known prior to the decision of the Supreme Court in *Coin and Currency* that he possessed a cause of action for the refund of the fine, the statute of limitations did not commence running until the date of that decision.

The government, in response, submits that Carlucci's guilty plea is not subject to collateral attack because it was voluntarily entered and because Carlucci received assistance of counsel which was adequate with respect to the then-existing law. Even if the conviction is invalid, the United States asserts, the district court has no jurisdiction to order the fine remitted. The six year statute of limitations, according to the government, began running at least at the time of *Marchetti* and *Grosso*, and thus the period for filing a proceeding under the Tucker Act elapsed before Carlucci instituted this action. Additionally, the government alleges that there is no statutory authorization for repayment of the fine, and that in any case Carlucci has not qualified for recovery because he has not submitted a claim to the Secretary of the Treasury in conformity with the requirements of 26 U.S.C. § 7422.

For reasons which will be set forth below, we reverse that portion of the district court's judgment that declined to expunge the conviction, and affirm that portion of the judgment that denied Carlucci's Tucker Act claim.

## III.

A. *The effect of Carlucci's Guilty Plea on the Availability of Collateral Relief.*

In three companion cases of *Brady, McMann* and *Parker* the Supreme Court established the general rule that where a conviction is based upon a plea of guilty, the conviction is subject to federal collateral attack only on limited grounds.[10] To invalidate his conviction the defendant must show that he did not make the plea knowingly, intelligently and voluntarily or upon a demonstration that the plea was not uttered with the assistance of counsel competent with respect to the law as it existed at the time of the conviction. In particular, the Court stated that "a voluntary plea of guilty intelligently made in light of the then applicable law does not become vul-

---

tive jurisdictions and agreeable to the usages and principles of law.

**9.** 28 U.S.C. § 1346(a) provides:

"The district courts shall have original jurisdiction, concurrent with the Court of Claims, of: . . .

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of

an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . ."

**10.** *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

nerable because later judicial decisions indicate that the plea rested on a faulty premise." [11]

However, in *Bannister v. United States* [12] this Court, *en banc*, decided that the general rule of the finality of guilty pleas did not preclude the assertion in a federal habeas petition of a Fifth Amendment defense by a person who had, prior to the ruling in *Leary*, [13] submitted a guilty plea to charges under the marihuana tax statutes, Bannister pleaded guilty to both counts of a two count indictment alleging criminal failure to pay the marihuana taxes, and in June, 1967, was sentenced to two concurrent prison terms. Thereafter, the Supreme Court, relying on the rationale of *Marchetti* and *Grosso*, held in *Leary* that the privilege against compulsory self-incrimination provided a defense against an accusation of concealing marihuana without payment of the federal transfer tax. [14] It was the judgment of a majority of this Court, albeit on the basis of somewhat divergent reasoning, that in light of *Leary* Bannister was entitled to have the writ issue in spite of his guilty plea.

■ We have interpreted the *Bannister* decision as meaning that in a situation such as that now before us, where a petitioner seeks to upset an earlier guilty plea on the basis of a decision articulating previously unrecognized constitutional rights,

> whether we apply the general rule of the guilty plea trilogy depends on the quality of the right sought to be asserted in the collateral attack. Does the newly-expressed right affect . . "the integrity of the conviction" . . or does it constitute what [has been] described as an "essentially procedural" change in the law . . . ? [15]

■ In the present case, the constitutional objection raised by Carlucci, like that in *Bannister* undermines "the integrity of the conviction." Indeed, the right asserted is the same as that urged in *Bannister*—freedom from criminal punishment for not incriminating one's self by paying a special tax on an activity closely circumscribed by criminal penalties. The Supreme Court, in *Coin and Currency* gave the following description of the self-incrimination privilege as formulated in *Marchetti*:

> "Unlike some of our earlier retroactivity decisions, we are not here concerned with the implementation of a procedural rule which does not undermine the basic accuracy of the fact finding process . . . . Rather, *Marchetti* and *Grosso* dealt with the kind of conduct that cannot constitutionally be punished in the first instance." [16]

We do not find persuasive the government's argument that our decision in *Bannister* has been subverted by the opinion of the Supreme Court in *Tollett v. Henderson*. [17] There the Supreme Court declared that the defendant's guilty plea to an indictment for murder foreclosed him from litigating on habeas the issue of racial discrimination in the selection of the grand jury that had indicted him. Eschewing an analysis solely in terms of a knowing waiver of a constitutional right, [18] the Court stated that in such cases the focus of the habeas inquiry should be on "the nature of the advice and the involuntariness of the plea, not the existence as such of an antecedent constitutional infirmity." [19]

The situation before us, however, is distinguishable from that in *Tollett*. In *Tollett*, as in *McMann*, *Brady* and

11. *Brady*, 397 U.S. at 757, 90 S.Ct. at 1473.

12. 446 F.2d 1250 (3rd Cir. 1971).

13. 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

14. 26 U.S.C. § 4744(a)(2).

15. *Smith v. Yeager*, 459 F.2d 124, 126 (3rd Cir. 1972).

16. 401 U.S. at 723, 91 S.Ct. at 1045.

17. 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

18. 411 U.S. at 266, 93 S.Ct. 1602.

19. *Id.*

*Parker*, the nature of the recently acknowledged constitutional right which formed the basis for the challenge to the conviction was essentially procedural. Here, in contrast, the assertion is that the very conduct charged against Carlucci is constitutionally privileged.[20]

In this case as in *Bannister*, and unlike *Tollett* and the cases of the trilogy, there is no longer any governmental interest in continuing to punish the offender.[21] In *Tollett* the state of Tennessee had a legitimate continuing interest in persisting with the conviction and punishment of the perpetrator of the murder at issue. There was also an on-going public concern in the chastening of those who had committed the crimes involved in *Parker, McMann* and *Brady*. Here, however, since the Supreme Court has held that the conduct in question is not constitutionally punishable,[22] upholding the conviction will not vindicate any legitimate societal goal.[23]

Also there is no difficulty here in assessing what course Carlucci would have followed if he had, at the time of his conviction, known of his rights under *Marchetti*. In *Tollett* it is difficult, perhaps impossible, to determine whether the defendant, if he had known the grand jury had been selected in a racially discriminatory manner, would have voluntarily waived his right to challenge the indictment in exchange for the prospect of a less burdensome sentence following a guilty plea. We may be quite certain on the other hand, that if *Carluc-*ci had known of his Fifth Amendment right under *Marchetti*, and had been competently counseled, he would not have pleaded guilty. For here, unlike in *Tollett*, the constitutional right in question is not merely one of several possible "pleas in abatement" [24] but a complete defense.[25] Vacating the plea therefore does not present the United States with the arduous task of attempting, years after the trial would originally have taken place, to piece together a case for the prosecution.[26] Carlucci is not now contesting the allegation that he did not pay the statutorily required taxes. Rather, he professes that his failure to do so was privileged under the Constitution.[27]

To hold that Carlucci's guilty plea prevents him from asserting the Fifth Amendment defense on collateral review would be inconsistent with the solicitude which the Supreme Court has evidenced for allowing defendants a realistic opportunity to assert the self-incrimination defense to prosecutions like those under the wagering tax statutes. The most significant case in this respect is *Haynes v. United States*.[28] Charged with possession of an unregistered firearm, Haynes moved before trial to dismiss the indictment because the statute abridged his privilege against self-incrimination. After the trial court denied the motion, Haynes pleaded guilty. On his appeal from that conviction, the Supreme Court stated, "Petitioner's plea of guilty did not, of course, waive his previous claim of constitutional privilege." [29]

---

**20.** *Cf. Bannister*, 446 F.2d at 1254 (Biggs, J.); 446 F.2d at 1264–65 (Gibbons, J., concurring).

**21.** We need not at this time determine the effect of a guilty plea in a plea bargaining situation where the self-incrimination defense does not apply to all of the charges. For instance, a defendant charged with possession of marihuana with intent to distribute and also accused of failure to pay the transfer tax may agree to plead to the tax count in exchange for dismissal of the other charge, the validity of which is unaffected by *Leary*. *See Gaxiola v. United States*, 481 F.2d 383 (9th Cir. 1973); *Bannister*, 446 F.2d at 1251–53.

**22.** *See Coin and Currency*, 401 U.S. at 723, 91 S.Ct. 1041.

**23.** *See Bannister*, 446 F.2d at 1254, 1255; *United States v. Russo*, 358 F.Supp. 436 (D.N.J. 1973).

**24.** *Tollett*, 411 U.S. at 268, 93 S.Ct. 1602.

**25.** *Marchetti*, 390 U.S. at 41–42, 88 S.Ct. 697. *See Bannister*, 446 F.2d at 1254, 1264; *United States v. Liguori*, 430 F.2d 842 at 849 (2 Cir.)

**26.** *Contrast McMann*, 397 U.S. at 733, 90 S.Ct. 1441.

**27.** *See Bannister*, 446 F.2d at 1254–55, 1264–65; *Liguori*, 430 F.2d at 849.

**28.** 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).

**29.** *Id.* at 87 n. 2, 88 S.Ct. at 725.

Also in *Leary*,[30] the defendant, who did not invoke the self-incrimination defense until after the verdict, took the stand and testified that he had indeed acquired the marihuana without paying the tax. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged," the Supreme Court said in *Tollett* in explaining the finality accorded to guilty pleas, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."[31] The Court held, however, that Leary's admission that he had committed those acts which constituted a violation of the statute did not preclude him from contending, after the trial, that his conviction abrogated the Fifth Amendment.

The aspect of the self-incrimination privilege pressed by Leary before the Supreme Court, Justice Harlan stated, was not the right to remain silent at trial, but rather the right not to be punished for his previous failure to obey a statute which required an incriminatory act. "His admission at trial that he had indeed failed to comply with the statute was perfectly consistent with the claim that that omission was excused by the privilege."[32]

Thus the seeming incongruity between the Supreme Court's treatment of the self-incrimination defense[33] and its later guilty plea cases intimates that the Court may, *sub silentio*, have recognized the distinction drawn in *Bannister*. In any case, there would appear to be no meaningful difference between a defendant who, like Leary, takes the stand and testifies to his guilt without invoking the Fifth Amendment defense, and one who admits his culpability more succinctly by entering a guilty plea.

In *Blackledge v. Perry*[34] the Supreme Court signaled that there are exceptions to the general rule articulated in *Brady, McMann, Parker* and *Tollett*. Perry, after a trial without a jury, was convicted in the state district court of the misdemeanor of assault with a deadly weapon. As a consequence of that conviction, Perry had an automatic right to a trial de novo in the superior court. After Perry evidenced his intent to exercise that right, the prosecutor obtained an indictment charging him with the felony of "assault with a deadly weapon with intent to kill and inflict various bodily injury." The indictment was grounded on the same assault that had been the basis of the earlier misdemeanor conviction. Perry pleaded guilty to the felony charge. Subsequently, however, he sought federal habeas corpus on the ground that the felony indictment deprived him of due process because it punished him for exercising his statutory right to a trial de novo. The Supreme Court held that, in spite of the guilty plea, federal habeas was available. The Court distinguished the holdings in *Tollett* and the *McMann* triad on the ground that the constitutional claims there did not, as did Perry's argument, challenge the very power of the state to bring the defendant into court to answer the charge against him. In *McMann*, for example, the defendants could have been brought to trial without the use of the

---

**30.** 397 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57.

**31.** 411 U.S. at 267, 93 S.Ct. at 1608.

**32.** 395 U.S. at 28, 89 S.Ct. at 1544.

**33.** In *Grosso*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906, the defendant had asserted in the district court only that the privilege against self-incrimination foreclosed his conviction for failure to pay the excise tax on wagering. He had not raised the constitutional issue with respect to the charges of failing to pay the occupational tax on wagering and conspiracy to avoid the latter tax. Even in the Supreme

Court his arguments did not address the validity of the occupational tax allegations. The Supreme Court, however, held that in light of its earlier decisions in *Lewis* and *Kahriger*, "we are unable to view his failure to present this issue as an effective waiver of the constitutional privilege." 390 U.S. at 71, 88 S.Ct. at 715. *See also United States v. Manfredonia*, 391 F.2d 229 (2d Cir. 1968); *Greenwood v. United States*, 392 F.2d 558 (4th Cir. 1968).

**34.** 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

allegedly coerced confessions. And Tollett, Justice Stewart pointed out, could have been brought to trial for the same crime through a new indictment by a properly selected grand jury. In *Perry*, on the other hand,

> The nature of the underlying constitutional infirmity is markedly different. Having chosen originally to proceed on the misdemeanor charge, in the District Court, the State of North Carolina was, under the facts of this case, simply precluded by the Due Process Clause from calling upon [Perry] to answer to the more serious charge in the Superior Court. Unlike the defendant in *Tollett*, Perry is not complaining of "antecedent constitutional violations" or of a "deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Rather, the right that he asserts and that we today accept is the right not to be hailed into court at all upon the felony charge. The very initiation of the proceedings against him in the Superior Court thus operated to deny him due process of law.[35]

The right asserted by Carlucci is somewhat akin to that involved in *Perry* in that Carlucci is not objecting to the procedures by which he was arrested and convicted. Rather, he claims "the right not to be haled into court at all" because the institution of the prosecution itself derogated from his right not to incriminate himself.

Accordingly, we conclude that the district court erred in holding that, because of *Tollett*, Carlucci's guilty plea is not open to collateral attack on the basis of *Marchetti* and *Grosso*.[36]

**B.** *Application of the Statute of Limitations to the Claim for Refund of the Fine.*

Even if we assume *arguendo* that the Tucker Act provides authority for district courts to order the return of fines based on convictions derogating from constitutional rights,[37] and further assume that a Tucker Act claim may be raised during the course of a coram nobis proceeding,[38] we must, because of the statute of limitations, conclude that the district court properly denied Carlucci's plea for restitution of the penalty.

■ Actions against the United States such as the one pressed here are controlled by the statute of limitations contained in 28 U.S.C. Section 2401(a). That section provides: "Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The protection afforded by section 2401(a) "may not be waived by the United States, and where it appears to the court that the time for bringing the action has run, the action must be dismissed."[39] Therefore, if Carlucci's action for the return of the fine imposed in 1963 was filed out of time, the district court was without authority to grant the monetary relief requested.

Since the statute requires that the complaint be filed within six years "aft-

**35.** 417 U.S. at 30–31, 94 S.Ct. at 2104.

**36.** Although the Court is aware of the contrary precedent in the District of Maryland in *Bluso v. United States*, 375 F.Supp. 1085 (D.C.Md. 1974), we find the rationale there unpersuasive.

**37.** *See Pasha v. United States*, 484 F.2d 630, 632 (7th Cir. 1973); *DeCecco v. United States*, 485 F.2d 372, 373 (1st Cir. 1973); *United States v. Summa*, 362 F.Supp. 1177, 1180 (D.Conn.1972), aff'd No. 73–1153 (2d Cir., filed August 14, 1973).

**38.** *See Pasha*, 484 F.2d at 633; *DeCecco*, 485 F.2d at 373–74; *Summa*, 362 F.Supp. at 1179;

*United States v. Lewis*, 478 F.2d 835, 836 (5th Cir. 1973).

**39.** *Christian Beacon v. United States*, 322 F.2d 512, 514 (3d Cir. 1963). As the Fifth Circuit has stated more recently, "Failure to bring an action within the time specified under the Tucker Act does not merely provide the government with a waivable defense to the action, but deprives the district court of jurisdiction to hear the action at all." *United States v. One 1961 Red Chevrolet Impala Sedan*, 457 F.2d 1353, 1357 (5th Cir. 1972).

er the right of action first accrues," a critical question is when Carlucci's right of action "accrued." The government argues that the cause of action accrued at the time the fine was imposed because all the events necessary to make out the claim for a refund had occurred at that time. Alternatively, the government contends that even if, as Carlucci asserts, the statute of limitations did not begin running until the claimant had reason to believe that he had a recoverable claim, the cause of action "accrued" on the date of the Supreme Court decisions in *Marchetti* and *Grosso* that the Fifth Amendment, properly interpreted, provided a defense to criminal charges under the gambling tax statutes.

Carlucci, on the other hand, contends that the limitation period did not begin when the fine was levied because *Kahriger* and *Lewis* indicated that, at least at that time, he did not have an enforceable claim against the United States. The statute began to run, Carlucci asserts, when the Supreme Court declared in *Coin and Currency* that the *Marchetti-Grosso* interpretation of the Fifth Amendment would be applied retroactively.

■ We conclude that the statute of limitations commenced running no later than January 29, 1968, the day *Marchetti* and *Grosso* were decided. Consequently, Carlucci's request for the return of the fine—a claim not presented until June 4, 1974—was beyond the jurisdiction of the district court.

■ In resolving the issue regarding when the statute of limitations commenced running, we must bear in mind that the time when the statute begins running is a matter of congressional intent.[40] The judiciary is not at liberty to create exceptions to or to enlarge the waiver of immunity by the government.[41]

■ There is no specific evidence of the legislative intent with regard to the time from which we should measure the period specified in section 2401(a). In construing similarly worded waivers of sovereign immunity courts have generally defined a right of action as "accruing" upon the occurrence of the final event necessary to complete the elements of the claim. "A claim first accrues when all the events have occurred which fix the alleged liability of the United States and entitle the claimant to institute an action."[42] Here, the wrongful conduct was complete upon payment of the fine, and the statute of limitations would therefore generally begin to run at that time.

The federal courts have, at least in some instances, postponed the commencement of the limitation period regulating suits against the United States where the claimant did not know, and in the exercise of reasonable diligence could not learn, that he had been injured by the government's allegedly wrongful conduct. The Court of Claims has provided the following exposition of this variant:

> In certain instances the running of the statute will be suspended when an accrual date has been ascertained, but plaintiff does not know of his claim. . . . Plaintiff must either show that [the United States] has concealed its acts with the result that plaintiff was unaware of their existence or

**40.** *Mann v. United States*, 399 F.2d 672, 673 (9th Cir. 1968). *See Crown Coat Front Co. v. United States*, 386 U.S. 503, 514, 517, 520, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967).

**41.** *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957); *Mann v. United States*, 399 F.2d 672, 673 (9th Cir. 1968).

**42.** *Japanese War Notes Claimants Ass'n v. United States*, 373 F.2d 356, 358, 178 Ct.Cl. 630 (1967). *See Cosmopolitan Mfg. Co. v. United States*, 297 F.2d 546, 547, 156 Ct.Cl. 142 (1962). *Cf.* Note, "Developments in the Law-Statutes of Limitations," 63 Harv.L.Rev. 1177, 1200 (1950).

[plaintiff] must show that its *injury* was "inherently unknowable" at the accrual date.[43]

This exception to the normal commencement of the limitations period does not appear applicable to the present claim, however, because Carlucci was aware of the damage to him at the time the fine was imposed. His situation is therefore distinguishable from that of the plaintiffs in *Japanese War Notes* who allegedly did not know that the United States was circulating counterfeit Japanese currency. Nor is his claim analogous to that of a medical malpractice plaintiff who cannot with reasonable diligence learn of the physician's negligent action or of his own injuries until some future time.[44]

In *United States v. One 1961 Red Chevrolet Impala Sedan*[45] the claimant sought compensation for property which had been forfeited to the government because of its use in the conduct of a wagering operation that did not comply with the federal gambling tax statutes. The Fifth Circuit ruled that under section 2401(a) the limitations period did not begin to run against the claimant until the decisions in *Marchetti* and *Grosso* gave notice that the owner of the automobile had a Fifth Amendment de-

fense against its seizure. That Circuit declared that the period should not commence until plaintiff had a "reasonable probability of successfully prosecuting his claim against the government,"[46] and that prior to those Supreme Court decisions his suit would probably have been dismissed on the basis of *Lewis* and *Kahriger*.

We need not, however, determine at this time whether section 2401(a) commenced running when the fine was imposed or when the *Marchetti* and *Grosso* decisions were announced.[47] Under either test, Carlucci's claim would be barred. This is so, because in any event the decisions in *Marchetti* and *Grosso* provided Carlucci with reasonable grounds to believe his rights had been violated.[48] Although there had been no ruling that the *Marchetti* doctrine would be applied retroactively for the benefit of persons like Carlucci, there was certainly nothing indicating that Carlucci could not obtain a refund if he pursued one promptly. Even if we accept, arguendo, Carlucci's argument that the running of section 2401(a) was suspended until such time as he had reason to know he might succeed with his claim against the United States, since *Marchetti* and *Grosso* were handed down more than six years before Carlucci applied for a refund, his claim is time-barred.[49]

**43.** *Japanese War Notes Claimants,* 373 F.2d at 358–59. *See Spevak v. United States,* 390 F.2d 977, 981, 182 Ct.Cl. 1884 (1968); *Tyminski v. United States,* 481 F.2d 257, 263 (3d Cir. 1973); *Ciccaroe v. United States,* 486 F.2d 253 (3d Cir. 1973); *Hanna v. Veterans' Administration Hospital,* 514 F.2d 1092 (3d Cir. 1975).

**44.** *Compare Tyminski v. United States,* 481 F.2d 257 (3d Cir. 1973).

**45.** 457 F.2d 1353 (5th Cir. 1972).

**46.** *Id.* at 1358 [emphasis added].

**47.** The Fifth Circuit reasoned that no purpose would be served by beginning the running of the statute prior to *Marchetti,* since the passage of time would not render inaccessible to the government any defense which under the *Marchetti* doctrine would have been available at the time of the forfeiture. However, it is at least questionable whether Congress intended

that the implementation of section 2401 should be delayed until the *Marchetti* decision.

**48.** *See Japanese War Notes Claimants,* 373 F.2d at 359.

**49.** Carlucci asserts that the statute of limitations was tolled by the initiation of a class action in *Neely v. United States,* Civil No. 73–1067 (W.D.Pa., filed Dec. 12, 1973). The effect of the class action may be decided when it has been determined whether Carlucci may recover as a member of the class.

Also, in light of our decision with respect to the running of the statute of limitations, we need not address the government's other arguments regarding the availability of a refund, namely that there is no statutory authorization for repayment of a fine and that in any case Carlucci has not qualified for recovery because he has not submitted a claim to the Secretary of Treasury in conformity with 26 U.S.C. § 7422.

## IV.

Accordingly, that portion of the judgment of the district court denying Carlucci's motion to set aside his conviction will be reversed, and that portion of the judgment refusing Carlucci's request for a refund of the fine will be affirmed.