Dick Andrew **GEE**

v.

**UNITED STATES of America.**

**Civ. A. No. 70–H–682.**

United States District Court, S. D. Texas, Houston Division.

Nov. 13, 1970.

David Berg, Houston, Tex., for petitioner.

James R. Gough, Asst. U. S. Atty., Houston, Tex., for respondent.

*Memorandum and Order:*

SINGLETON, District Judge.

Dick Andrew Gee, petitioner herein, at this moment sits in the federal penitentiary because he was convicted for failing to submit to induction into the armed forces. 50 U.S.C. App. § 462(a). Soon after petitioner pled guilty to, and was sentenced for, this offense, the Supreme Court rendered its decision in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970). In the belief that *Welsh, supra,* would rescue him from the confines of jail, petitioner has brought before the Court a motion to vacate sentence under 28 U.S.C. § 2255. Specifically, petitioner contends that in light of *Welsh, supra,* his local draft board improperly failed to accord him a conscientious objector selective service classification.

Since the time of the Civil War there has been a policy, national in scope, in favor of exempting from military service those whose consciences will not permit them to bear arms for their country. The statutory embodiment of this policy is found in § 6(j) of the Selective Service Act of 1967 (50 U.S.C. App. § 456 (j)):

"Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, *by reason of religious training and belief*, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or *a merely personal moral code.*" (Emphasis added.)

In United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), the Supreme Court construed § 6(j) and announced the test for determining whether a conscientious objector's beliefs are religious. That test is whether that person has "[a] sincere and meaningful belief which occupies in the life of its possessor a place parallel to that filled by the God of those admittedly qualifying

for the exemption * * *." Id. at 176, 85 S.Ct. at 859. The Court made it clear that "these sincere and meaningful beliefs * * * need not be confined in either source or content to traditional or parochial concepts of religion." Welsh v. United States, *supra*, 398 U.S. at 339, 90 S.Ct. at 1796 at 26 L.Ed.2d 318. In *Welsh* the Court reaffirmed what it held in *Seeger* by concluding that Section 6(j) "exempts from military service all those whose consciences, spurred by deeply held moral, ethical, or religious beliefs, would give them no rest or peace if they allowed themselves to become a part of an instrument of war." 398 U.S. at 344, 90 S.Ct. at 1798, 26 L.Ed.2d at p. 321.

The implementation of these principles is left primarily to local draft boards and not the courts. In § 10(b) (3) of the Selective Service Act of 1967 (50 U.S.C. App. § 460(b) (3)), judicial review of a registrant's classification is strictly limited, except as a defense to a criminal prosecution under Section 12 (50 U.S.C. App. § 462) after the registrant has responded either affirmatively or negatively to an order to report for induction to those cases where there is no basis in fact for the classification assigned to the registrant. In order to determine, therefore, whether the denial to petitioner of conscientious objector status has any basis in fact, it is necessary to examine the evidence before petitioner's local board which led it to assign him the selective service classification which it did.

The record reflects that petitioner was born on October 12, 1947, and registered with his draft board, as he was required by law to do, shortly after his eighteenth birthday. At that time, he made no claim to be a conscientious objector, but soon afterward was exempted as a full-time student enrolled in college. It was not until after petitioner had been ordered to report for a physical examination, after which he was found to be fit for duty in the armed service and after he was ordered to report for induction, four years after he initially registered, that he wrote his local board, on November 25, 1969, and requested classification as a conscientious objector. On November 26, 1969, petitioner returned to his draft board completed SS Form 150. Petitioner was unable to sign the statement which, as printed on the form, stated "I am, by reason of my religious training and belief, conscientiously opposed to participation in war in any form * * *" and actually did so only after striking the words "religious training and." When asked to describe the nature of his belief and to say why he considered it to be based on religious training and belief, petitioner replied, "This claim is not based on a religious belief, but on a personal moral conviction." He made a similar response to another question asking him to elaborate on the source of his religious life. To yet another question asking him to what extent his religious training and beliefs would preclude him from serving in a noncombatant capacity, petitioner responded that his "personal moral conviction" restricted him from participating in any way. Below that, petitioner named several people to whom he had expressed the sentiments expressed on the form. He left blank a space giving him the opportunity to name references who could provide the local board information regarding his religious training and belief. Subsequent to the local board's receipt of this form, petitioner appeared for a personal interview. Though the record is not abundantly clear as to what was said at that time, petitioner did say that he had not requested SS Form 150 until that late date because he did not believe he would be called for service. The local board denied petitioner's request for conscientious objector status and reordered him to report for induction, which he did, but thereafter failed to take the symbolic step forward.

From this record, it must be concluded that the denial to petitioner of a conscientious objector classification was without foundation in fact. A close scrutiny of *Welsh, supra*, reveals a striking similarity between the circum-

stances under which Welsh was denied classification as a conscientious objector and those by which petitioner was denied the same classification.

■ As with Welsh, petitioner did not indicate his pacifist views to his draft board when he registered for the draft. As with Welsh, petitioner's objection to war matured only in subsequent years. As Welsh did, petitioner struck the words "religious training and" before signing the statement which appears on the form as "I am by reason of my religious training and belief, conscientiously opposed to participation in war in any form." As Welsh did, petitioner believed, and still does believe, that killing in war is wrong, unethical, and immoral, and that his conscience forbids him from taking part in such an evil practice.[1] Given these resemblances to Welsh, supra, plus the fact that the record is devoid of any basis at all for the draft board's denial of conscientious objector classification, it is held that petitioner's conviction, founded as it is on an improper selective service classification, must be set aside.

■ The government contends that judicial review by way of Section 2255 of petitioner's classification is precluded because petitioner pled guilty to the charge of failing to submit for induction. McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970); Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). These cases are inapposite. Here, Gee pled guilty to charges which were based upon an erroneous selective service classification approximately two weeks before the Supreme Court's decision in Welsh, supra. Although there are no issues of constitutional proportions in the instant case, Gee finds himself in the shoes of the petitioner in United States v. Lucia, 416 F.2d 920 (5th Cir. 1969), affd. en banc 423 F.2d 697 (5th Cir. 1970). There, it was held that Lucia's plea of guilty did not preclude his application for coram nobis in which he asserted that he was entitled to the benefits of the Supreme Court's decisions in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), both of which were decided subsequent to Lucia's plea of guilty. There, as here, the government argued that a plea of guilty waives all defenses and procedural defects which are not jurisdictional. That argument was rejected as follows:

"That statement is true only when the defendant is able to assess the various defenses available to him, as well as the consequences of submitting to conviction. Otherwise, the requirements integral to accepting guilty pleas make no sense. See Fed.R.Crim.P. 11; McCarthy v. United States, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418; Von Moltke v. Gillies, 1947, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309." (416 F.2d 923).

This comports with the definition of waiver announced in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) as "an intentional relinquishment or abandonment of a known right or privilege." Just as Lucia was not held strictly accountable for rights which had not become law at the time

1. To quote petitioner's statement on SS Form 150:
   "My personal moral conviction restricts me from serving in any situation in the Armed Forces. I cannot, without being untrue to my beliefs, participate in any way with a system whose activities incorporates the killing of human beings."
   Similarly, Welsh wrote on his form:
   "I believe that human life is valuable in and of itself; in its living; therefore I will not injure or kill another human being. This belief (and the corresponding duty to abstain from violence toward another person) is not superior to those arising from any human relation. On the contrary: it is essential to every human relation. I cannot, therefore, conscientiously comply with the Government's insistence that I assume duties which I feel are immoral and totally repugnant."

of his plea, the same cannot and will not be expected of Gee.

■ The government also contends that *Welsh, supra,* should not be applied retrospectively. In *Lucia, supra,* however, it was held that "new constitutional rules going to the fundamental fairness of a trial, the accuracy and reliability of the fact-finding process, rules that substantially reduce the likelihood that an innocent person will be convicted" will be given retroactive application. *Welsh, supra,* is a decision which goes to the integrity of the fact-finding process in all prosecutions under the Selective Service statutes where the issue of the registrant's Selective Service classification may be raised as a defense. This Court is duly mindful that in *Lucia, supra,* the question was the retroactivity of new constitutional standards while here the question is one concerning new statutory standards of application. It need not be held that Welsh is fully retroactive or to what extent it is retroactive at all. But where, as here, the only difference between a Welsh who is improperly denied conscientious objector classification and a Gee who is convicted of the same offense is two weeks, this Court cannot in good conscience hold that one, but not the other, must be given preferential treatment under Section 6(j).[2]

■ There remains only the issue of what relief is appropriate. Section 6 (j) in substance provides that when one is granted exemption as a conscientious objector to all forms of military duty, he may nevertheless be required to perform, for a period equal to that he would otherwise be obligated to spend in military service, "civilian work contributing to the maintenance of the national health, safety, or interest * * *".

Should petitioner be granted conscientious objector classification and subsequently fail to respond to an order directing him to report for civilian duty in lieu of military service, he would have committed a new offense under Section 12 and thereby be vulnerable to prosecution and conviction. If petitioner's beliefs are such that he could not consistently with good conscience perform such civilian duty, no useful purpose would be served by allowing him to replead. Accordingly, petitioner's sentence will be vacated only upon the condition that he indicate to the Court within thirty (30) days from the entry hereof his willingness to accept civilian duty.

It is, therefore, ordered, adjudged, and decreed that the motion of Dick Andrew Gee to vacate the sentence imposed upon him in CR. 70–H–53 be, and the same is hereby, granted, subject to the condition presented above.

---

2. It is appropriate to say at this point that there are some very serious doubts as to the constitutionality of Section 6(j), doubts which were expressed by Mr. Justice Harlan in his concurring opinion in *Welsh, supra.* The Supreme Court will likely resolve these doubts this term, having granted certiorari in Gillette v. United States, 399 U.S. 925, 90 S.Ct. 2236, 26 L.Ed.2d 791 and Negre v. Larsen, 399 U.S. 925, 90 S.Ct. 2256, 26 L.Ed.2d 792 to explore the question of whether it is constitutionally permissible to classify conscientious objectors on religious, as distinguished from merely moral, philosophical, political or sociological grounds.