159 N.J. Super. 317 (1978)
387 A.2d 1248
PORTER AND RIPA ASSOCIATES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
200 MADISON AVENUE REAL ESTATE GROUP, A LIMITED PARTNERSHIP, LOUIS C. RIPA, GENERAL PARTNER, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided April 24, 1978.
*319 Mr. David N. Ravin for plaintiff (Messrs. Ravin & Kesselhaut, attorneys).
Mr. Edwin C. Landis, Jr. for defendant (Messrs. Meyner, Landis & Verdon, attorneys).
POLOW, J.S.C.
Plaintiff Porter and Ripa Associates, Inc. (PAR), an architectural and engineering firm, as tenant under a 15-year lease dated July 24, 1970, occupied premises in Morris Township owned by defendant 200 Madison Avenue Real Estate Group (200 Madison). Article I of this lease has been amended to increase the monthly rent, but otherwise the lease remains in its original form. Article X provides, in pertinent part, as follows:
In the event of the nonpayment of said rent, or any installment thereof, at the times and in the manner above provided * * * the landlord or its agents shall have the right to and may enter the Demised Premises * * * without being liable for any prosecution or damages therefore. * * * Such re-entry by the landlord shall not operate to release the Tenant from any rent to be paid or covenants to be performed hereunder during the full term of this lease. * * * In any such event the landlord shall have the right, as agent of the tenant, to take possession of any furniture, fixtures or other personal property of the tenant found in or about the Demised Premises and sell the same at public or private sale and to apply the proceeds thereof to the payment of any monies becoming due under this lease * * *.
Article XXII of the lease provides:
In case of violation by the Tenant of any of the covenants, agreements, terms and conditions of this lease, and upon failure to discontinue such violation within ten (10) days after written notice thereof given to the Tenant, this lease shall thenceforth, at the option of the Landlord, become null and void, and the Landlord may re-enter without further notice or demand * * *.
*320 At the time of execution of this lease in 1970 distress procedure similar to that provided by the lease in Article X was generally assumed to be available to landlords with or without such contract language, pursuant to N.J.S.A. 2A:33-1 et seq. Notice was not required before re-entry and seizure under our distress statute when this lease was executed.
It is established by appropriate sworn documentation on these cross-applications that the landlord resorted to what its counsel describes in his brief as "Self-Help Possession," that is, the landlord took possession of all PAR's property in the demised premises and locked the tenant out on January 9, 1978 because of nonpayment of two months rent  those installments due on December 1, 1977 and January 1, 1978. Although there had been discussions about the rent due and demands made for payment, no notice of re-entry nor of the intent to take possession of the tenant's property was given. PAR then initiated this action for recovery of its property, damages, punitive damages and termination of the lease on the ground that the landlord "wrongfully and illegally" seized the premises.
Defendant landlord now moves for summary judgment in its favor asserting that its acts were all taken in strict compliance with what it calls the "clear and unambiguous" language of Article X of the leasing agreement. Plaintiff PAR moves for partial summary judgment in its favor, declaring that seizure of its property without notice violates the specific terms of the lease as well as constitutional due process requirements.
To support its due process argument PAR relies substantially on the rationale of Judge Greenberg's decision in Van Ness Industries v. Claremont Painting, 129 N.J. Super. 507 (Ch. Div. 1974), which holds that
* * * insofar as chapter 33 of Title 2A authorized distress for rents by landlords, the chapter is unconstitutional, and since the common law substantive right of distraint is governed by invalid procedural methods it may not be exercised in New Jersey. [at 515]
*321 Judge Greenberg thus found the distraint procedure in New Jersey violative of the Due Process Clause of the 14th amendment of the United States Constitution because of its failure to require notice to the tenant prior to seizure of the leased premises and the tenant's property located therein. PAR argues that here, also, the landlord's seizure of the premises was unconstitutional without prior notice and an opportunity to be heard before seizure of its property for nonpayment of rent. In any event, says PAR, notice was intended by the parties to the lease as a requirement before seizure.
Defendant 200 Madison argues that Article X of the lease makes no reference to notice and thus "clearly and unambiguously" authorizes physical repossession and seizure without notice upon nonpayment of rent. Furthermore, it says the Van Ness requirement of prior notice should not be applied here because by executing the instant lease "clearly" providing for "self-help" without notice, PAR has waived any right to notice if it otherwise exists. And, in any event asserts the lessor, this court is not bound to follow the law sent forth by a court of coordinate jurisdiction. Van Ness, the landlord maintains, should not be followed because it was based on inapplicable authority and there is no such constitutional right to notice with regard to premises leased solely for nonresidential use. Finally, defendant maintains that due process requirements are inapplicable to the present case because there is a total absence of any state involvement in the lockout and seizure of property by defendant.
I am satisfied that the constitutional right to due process by way of notice is subject to waiver, as the landlord asserts. Indeed, the United States Supreme Court observed in National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-316, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964), that
*322 [I]t is settled * * * that parties to a contract may agree in advance to submit to the jurisdiction of a given court, to permit notice to be served by the opposing party, or even to waive notice altogether. [Emphasis supplied]
See also, D.H. Overmyer Co. v. Frick Co., 405 U.S. 174, 185-186, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); Boddie v. Connecticut, 401 U.S. 371, 378-379, 91 S.Ct. 780, 28 L.Ed. 2d 113 (1970), and Williams v. Trans World Airlines, 149 N.J. Super. 585, 589 (Ch. Div. 1977).
However, it is just as firmly established that "every reasonable presumption should be indulged against * * * waiver" of a constitutional right. Hodges v. Easton, 106 U.S. 408, 412, 1 S.Ct. 307, 27 L.Ed. 169 (1882). The vast majority of cases concerning waiver of constitutional rights deal with criminal proceedings wherein the courts repeatedly stress that there must be "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed. 2d 747 (1970); Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); United States v. Corbitt, 541 F.2d 146, 149 (3 Cir.1976), and State v. Green, 129 N.J. Super. 157, 161 (App. Div. 1974). In Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the Supreme Court noted that:
With respect to procedural due process * * * the Court has acknowledged that waiver is possible, while explicitly leaving open the question whether a "knowing and intelligent" waiver need be shown. [at 235, 93 S.Ct. at 2052]
Our Appellate Division, in State v. Morgenstein, 147 N.J. Super. 234 (App. Div. 1977) has observed that in New Jersey:
Even within the setting of a civil controversy it must affirmatively appear that the party charged with waiver knew his rights and deliberately intended to relinquish them. [at 238; emphasis supplied] *323 In this case the parties executed the lease in 1970. At that time the operative statute, N.J.S.A. 2A:33-1 et seq., required no prior notice in distress proceedings. A tenant executing a lease in this State would have been unaware of a right to notice not required by the statute until Van Ness was decided in 1974. Hence, plaintiff may not be said, as of 1970, to have freely, voluntarily and understandingly waived a constitutional right to notice which had not yet been judicially determined to exist. As stated in Muniz v. Beto, 434 F.2d 697, 704 (5 Cir.1970), "the courts have repeatedly ruled that one cannot waive a constitutional right prior to the time such a right is declared to exist." See also, e.g., United States v. Summa, 362 F. Supp. 1177, 1180 (D. Conn. 1972); Gee v. United States, 319 F. Supp. 581, 584-585 (S.D. Tex. 1970), and United States v. Rosenson, 291 F. Supp. 874, 877-878 (E.D. La. 1968).
The basis for this principle can be traced to Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), and Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). Marchetti concerned the appeal of a defendant who was convicted for willfully failing to pay an occupational tax for engaging in the business of accepting wagers. Defendant argued that these statutory obligations violated his Fifth Amendment right against self-incrimination because engaging in such activities was violative of several criminal statutes. The Court of Appeals, at 352 F.2d 848 (2 Cir.) had rejected this argument relying primarily on Lewis v. United States, 348 U.S. 419, 422, 75 S.Ct. 415, 418, 99 L.Ed. 475 (1955), which had declared that "there is nothing violative of the Fifth Amendment" under such circumstances. In Marchetti and Grosso the Supreme Court overruled Lewis and held that such occupational taxes could not be employed to punish those who properly assert the privilege against self-incrimination. In both cases the court concluded *324 that there had been no waiver of the right to assert the privilege in the failure to do so initially, before the right was originally established. Here, too, it cannot be said that plaintiff, by signing the lease with the self-help seizure clause, knowingly and intelligently waived a right to notice not declared to exist until some four years after the lease in question had been executed.
200 Madison insists that this court is not bound to follow Van Ness, relying on the following rule of law set forth in Wolf v. Home Ins. Co., 100 N.J. Super. 27 (Law Div. 1968), aff'd 103 N.J. Super. 357 (App. Div. 1968):
Our system of jurisprudence envisions that while the opinions of courts of coordinate jurisdiction be taken into consideration, they are nevertheless not binding on a court of equivalent rank. [at 35, citations omitted][1]
Arguing that the authority cited in Van Ness does not support its holding, defendant concludes that this court should not follow that ruling with regard to prior notice as a constitutional prerequisite in distraint proceedings.
The landlord maintains that the Van Ness ruling is primarily based upon six United States District Court decisions which invalidate specific state distraint statutes for failure to provide adequate due process protection: Gross v. Fox, 349 F. Supp. 1164 (E.D. Pa. 1972); MacQueen v. Lambert, 348 F. Supp. 1334 (M.D. Fla. 1972); Holt v. Brown, 336 F. Supp. 2 (W.D. Ky. 1971); Klim v. Jones, 315 F. Supp. 109 (N.D. Cal. 1970); Collins v. Viceroy Hotel Corp., 338 F. Supp. 390 (N.D. Ill. 1972); Gibbs v. Titelman, 369 F. Supp. 38 (E.D. Pa. 1973). None of the statutes *325 dealt with by the cited cases, notes 200 Madison, are analogous to the New Jersey distraint statute in that ours now applies to nonresidential tenants only. In contrast, the statutes of other states in the cited cases deal with distraints against residential tenants, lodgers at inns and hotels, and consumer debtors.
Defendant seeks to make a similar distinction with respect to the holdings in the three Supreme Court cases which are, in fact, the foundation of the Van Ness ruling: Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Overmyer, supra, and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). In Sniadach the Supreme Court prohibited the garnishment of wages without prior notice to the garnishee. The Van Ness decision acknowledges (129 N.J. Super. at 512) that in Sniadach the Supreme Court "laid great stress on the nature of the property being seized [wages], and noted that such a taking may impose tremendous hardship on wage earners with families to support." In Overmyer the court sustained a statute authorizing a confession of judgment provision in a note providing for the entry of judgment without notice upon default. The Supreme Court stressed that this was a "corporate-property-right case." And in Fuentes, ex parte attachment statutes which did not provide for prior notice were ruled to be in violation of the Due Process Clause except in extraordinary circumstances. The creditors involved in Fuentes who were subject to attachment were individual consumers who had purchased basic household goods. 407 U.S. at 70-71, 92 S.Ct. 1983.
The thrust of defendant's argument is that all but one of the cases primarily relied upon by Judge Greenberg in Van Ness involved noncommercial settings wherein individuals rather than business entities could have significant personal property taken from them. Defendant further notes that in the one case cited by Judge Greenberg concerning failure to give prior notice to a corporate entity, Overmyer, lack of such notice was not held to be in violation of the *326 Due Process Clause. Wherefore, defendant concludes that because the New Jersey distraint statute is now applicable to nonresidential property only, the authority cited in Van Ness does not support the conclusion therein.
Defendant's commercial-residential dichotomy theory has been submitted to the Supreme Court and determined to be without merit in North Georgia Finishing Co., Inc. v. DiChem. Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (1975), which was decided one year after Van Ness. In Di-Chem the court invalidated a garnishment statute which did not provide for prior notice. Both parties involved were commercial enterprises, and the court specifically noted that it was facing a situation "involving parties of equal bargaining power." The Supreme Court rejected any commercial-consumer or commercial-residential dichotomy, holding that:
We are no more inclined now than we have been in the past to distinguish among different kinds of property in applying the Due Process Clause. Fuentes v. Shevin, 407 U.S. at 89-90, 92 S.Ct. 1983, 32 L.Ed.2d 556. [at 608, 95 S.Ct. at 1983]
The ruling in Overmyer that prior notice was not there required was based upon the specific finding that there had been a knowing and intentional waiver of the right to such notice. 405 U.S. at 187, 92 S.Ct. 775. No such finding is justified here. Rather, as noted above, just the contrary is mandated by the facts in this case. PAR cannot, under the circumstances, be found to have knowingly and intentionally waived its constitutional right to notice.
Defendant also argues that Van Ness is inapplicable under the doctrine that the 14th Amendment ensures citizens due process protection only against actions taken by the State while erecting "no shield against merely private conduct, however discriminatory or wrongful." Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), and United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588 (1875). In Van Ness state involvement in New Jersey's *327 distress procedures was found sufficient to invoke due process protection. Specifically noted in Van Ness were the State's duty to assist in having the seized goods and chattels inventoried and appraised if the distraint is not dissolved within ten days, N.J.S.A. 2A:33-9, and the requirement to deposit any surplus sale proceeds with the sheriff or constable for the benefit of the tenant. Van Ness, supra, 129 N.J. Super. at 514. Defendant argues in its reply brief that in contrast to the facts of Van Ness "the present fact situation is devoid of any joint activity between defendant and the state or its agents" because self-help was here taken pursuant to contractual agreement and not the statute governing distress.
Indeed, Judge Greenberg distinguished the facts confronting him from those of Messenger v. Sandy Motors, Inc., 121 N.J. Super. 1 (Ch. Div. 1972), which sustained N.J.S.A. 12A:9-503 providing for self-help repossession of secured collateral by noting that "Messenger is distinguishable in that the right to repossession arose pursuant to the agreement between the parties and thus was a creature more of contract than law." Van Ness, supra, 129 N.J. Super. at 514. Moreover, the agreement in Messenger specifically provided that no notice prior to seizure was required. 121 N.J. Super. at 3. Whereas the contract in Messenger explicitly permitted self-help "without previous notice or demand for performance", Article X of this lease simply makes no reference to notice. Defendant argues that, as in Messenger, its self-help was based on contract rather than statute. But as previously noted in this opinion, plaintiff cannot be deemed to have implicitly waived its right to prior notice before that right ever arose, and in any event, Article XXII requires notice to the tenant to cure any default. Even though Article X does not specify notice as a precondition to re-entry, when read as a whole the lease is, at best, ambiguous in the light of the specific notice requirement contained in Article XXII. If there is no waiver of the due process right to notice as applied to statutory distraint *328 proceedings, it would surely be inequitable to find such a right defeated by a contract which is, at best, silent with regard to notice and quite similar in substance to the distraint provisions of the statute, which the parties had the right to assume required no prior notice in 1970 when the lease was executed.
As stated above, defendant's attack on Van Ness is without merit. I conclude that Van Ness is a sound statement of law. But, whether or not Van Ness would of itself be controlling, and separate and apart from due process requirements, the lease itself provides an independent basis for PAR to prevail in its motion for partial summary judgment. Although Article X simply makes no reference to prior notice, Article XXII of the lease, entitled "DEFAULT OF PROVISIONS OF LEASE," requires written notice "in case of violation * * * of any of the covenants, agreements, terms and conditions." That provision permits the landlord to re-enter only upon failure of the tenant to discontinue such violation within ten days after "written notice thereof given to the tenant." Whatever doubt there might be must be resolved in favor of the tenant. In Carteret Properties v. Variety Donuts, Inc., 49 N.J. 116 (1967), wherein a landlord sought to evict a tenant for alleged lease violations, the court ruled that:
In situations of this sort, it is only just that ambiguities in a lease which are reasonably susceptible of disparate interpretations should be resolved in favor of the tenant. Where doubt exists courts generally favor the tenant rather than the landlord. [at 127]
Under the facts in this case I find that the notice requirement of Article XXII is applicable to Article X. Such notice was not given.
Accordingly, partial summary judgment is granted in favor of plaintiff, and defendant's motion for summary judgment is denied.
NOTES
[1] This court recognizes the principle stated to the extent that it applies to trial court opinions. Smith v. Smith, 150 N.J. Super. 194, 197 (Ch. Div. 1977); Mazza v. Ins. Co. of North America, 149 N.J. Super. 60, 62 (Law Div. 1977), and State v. Pittman, 124 N.J. Super. 334, 337 (Law Div. 1973).